169 A.D. 485        PEOPLE v. DRAPER.   (No. 153–110.)

(Supreme Court, Appellate Division, Third Department.   September 15, 1915.)

1. STATUTES ⨮211—CONSTRUCTION—TITLE.
    Though the title of a statute is no part of it, the court may resort to the title to aid in determining legislative intent otherwise ambiguous.
    [Ed. Note.—For other cases, see Statutes, Cent. Dig. § 288; Dec. Dig. ⨮211.]

2. PROSTITUTION ⨮1—STATUTORY OFFENSE.
    The purpose of Laws 1906, c. 413, re-enacted in Penal Law (Consol. Laws, c. 40) § 2460, entitled "Compulsory Prostitution of Women," is to protect women against a system which, by the use of money and other

valuable considerations, coerced and controlled women, and it deals with permanent conditions, and not with individual and voluntary associations.

[Ed. Note.—For other cases, see Prostitution, ·Cent. Dig. §§ 1, 2; Dec. Dig. ☞1.]

3. PROSTITUTION ☞1—STATUTORY OFFENSE.

Under Laws 1906, c. 413, § 1, re-enacted in Penal Law, § 2460, subd. 2, punishing any person who shall place any female in the charge or custody of another person for immoral purposes, or in a house of prostitution with intent that she shall live a life of prostitution, the mere taking of a woman to a house of prostitution by a man who remains with her does not constitute the offense, but in addition she must be placed there with the intent required.

[Ed. Note.—For other cases, see Prostitution, Cent. Dig. §§ ·1, 2; Dec. Dig. ☞1.]

4. STATUTES ☞230—ORIGINAL STATUTES AND AMENDMENTS.

An original statute and its amendments must be read together, and viewed as one act passed at the same time, to ascertain its meaning.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 311; Dec. Dig. ☞230.]

5. PROSTITUTION ☞1—OFFENSES—STATUTES—CONSTRUCTION.

Penal Law, § 2460, subd. 1, as amended by Laws 1910, c. 618, punishing the importation and exportation of women for immoral purposes, does not deal with the problem of compulsory prostitution of women, but makes any of the enumerated agencies in importation or exportation of women for immoral purposes an offense, and is not concerned with any element of coercion.

[Ed. Note.—For other cases, see Prostitution, Cent. Dig. §§ 1, 2; Dec. Dig. ☞1.]

6. STATUTES ☞202—CONSTRUCTION—ELIMINATION OF WORDS.

Words of a statute which fail to have any useful purpose may be eliminated in ascertaining the legislative intent.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 280; Dec. ·Dig. ☞202.]

7. PROSTITUTION ☞1—OFFENSE—STATUTORY PROVISION.

The offense denounced by Penal Law, § 2460, subd. 3, punishing any person who shall induce, entice, or procure any woman for purpose of prostitution, "or" to enter a house of prostitution, when interpreted, as it must be, in connection with the entire section, entitled "Compulsory Prostitution of Women," is not completed unless accused induced, enticed, or procured a female to enter a house of prostitution for immoral purposes; and an indictment alleging that accused feloniously induced and procured prosecutrix for immoral purposes, and advised her and induced her to have sexual intercourse for money with a man whose name is unknown, and whom he brought to her for that purpose, does not charge a violation of the subdivision; the word "or" being surplusage.

[Ed. Note.—For other cases, see Prostitution, Cent. Dig. §§ 1, 2; Dec. Dig. ☞1.]

Howard, J., dissenting.

Appeal from Albany County Court.

Clifton C. Draper was convicted of violating Penal Law, § 2460, subd. 3, and he appeals. Reversed, and accused discharged.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

Charles B. Templeton, of Albany, for appellant.

Harold D. Alexander, Dist. Atty., of Albany, for the People.

WOODWARD, J. The indictment—

"accuses Clifton C. Draper of the crime of inducing and producing a girl for the purpose of prostitution, committed as follows: The said Clifton C. Draper, on March 23, 1914, at the town of Colonie, in this county, did feloniously induce and procure Frances Decker for the purpose of prostitution, and did advise her to have unlawful sexual intercourse for money with men, and did feloniously induce and procure her to have unlawful sexual intercourse for money with a man whose name is to this grand jury unknown, and whom he brought to her for that purpose."

The evidence in support of this indictment is furnished by two girls, both of whom had been previously sentenced and served terms in the House of Good Shepherd in Albany for offenses against decency, and who describe themselves as "wayward girls." They lived in Kingston, and on the 18th day of March, 1914, on their own motion, so far as appears, they came to Albany and took a room at the Navarre, a hotel located on Broadway. On Sunday evening, March 22d, taking their evidence for it, they were at the railroad station between 10 and 11 o'clock, and were accosted by the defendant and a male companion, and after some conversation the four walked down Broadway to the foot of State street, where they took a car and went out to a roadhouse known as Hennessy's. They danced and drank, and finally the defendant registered himself and Frances Decker as husband and wife, and the two went upstairs together and occupied a room and cohabited during the night, while the other couple did likewise. Monday the parties all returned to Albany, but the defendant is said to have told the girls that they would go back to Hennessy's that night, and that he would supply a male companion in the place of the one who had gone out with them on Sunday evening, and who had left them early Monday morning. It is claimed that on this occasion the defendant told the girls that they must ask money from the men; that they demurred to such suggestion, when he said to them: "Don't be a G——d d——n fool; * * * ask for a dollar off each fellow you get that way."

There is no suggestion that the defendant asked for or received any money from these girls, or that he expected to derive any revenue from them; the learned district attorney merely suggesting that his compensation was to come by way of a gratification of his own lusts, which is clearly not a legal consideration. On Monday afternoon, the day of the alleged crime, so the story of these wayward girls goes, they stood on a street corner, at defendant's suggestion, while the latter went out and found another fellow for them. It appears that the defendant found his man, and that the party of four went to a Chinese restaurant, where they had lunch, and then took a trolley car for Hennessy's. There they repeated the exercises of the previous evening, except that on this second occasion the defendant registered himself and Anna Lufkin as husband and wife, leaving Frances Decker to the unknown man, and the two latter occupied a room adjoining that occupied by the defendant and the Lufkin girl. This night appears to be the one designated in the indictment, though the testimony includes the following day, when it is claimed that the party returned to Albany and the defendant procured a third man to make

up the quartette. The party had dinner at Keeler's, and went out to Hennessy's, where it was intended that the defendant was to occupy the room with the Lufkin girl, leaving the Decker girl for the new man; but it appears that a quarrel arose, the new man deserted the party, and the defendant occupied the bed with both of these girls, and at breakfast time had a fit, and subsequently the girls got away and went to Troy, where they were soon afterward arrested and confined in an institution, and from whence they came to this prosecution. It is claimed that from time to time the defendant renewed his suggestion that these girls should take money from the men, and it is claimed that the Decker girl, the complaining witness, received $1 from her companion of Monday night.

This, briefly, is the story told by these girls. They are vague and uncertain in the details, contradictory of each other, and altogether the case, upon the evidence, is most unsatisfactory. The statute provides (subdivision 5, § 2460, Penal Law) that "no conviction shall be had under this section upon the testimony of the female unless supported by other evidence"; and, while there is a colorable support in the evidence in this case of some of the matters alleged against the defendant, it is so utterly lacking in character that it ought not to stand as the basis of the judgment, unless the supporting evidence goes to the material portions of some crime clearly defined by the statute. We come, therefore, to the consideration of the statute, that we may determine what crime is charged, what are the elements of the crime, if it is defined in the statute, and that it was necessary to have supported by the evidence. It is difficult to pursue with patience the conduct of the defendant and his companions; but the defendant is standing under a sentence of not less than four years, and not more than six years and six months, with a fine of $500, and he is entitled here to the protection of the law.

[1] Section 2460 of the Penal Law is derived from chapter 413 of the Laws of 1906, entitled:

"An act to amend the Penal Code, relative to crimes against the person and against public decency and good morals and designed to prevent compulsory prostitution of women, and the importation of women from foreign countries, et cetera, for immoral purposes and to provide penalties therefor."

While it is true that the title of an act is no part of the law, yet it may be legitimately resorted to as an aid in determining legislative intent, when that intent is otherwise somewhat ambiguous (People ex rel. Commonwealth Ins. Co. v. Coleman, 121 N. Y. 542, 544, 25 N. E. 51, and authority there cited); and certainly no one will contend that subdivision 3 of section 2460 of the Penal Law is free from such ambiguity. The act as originally adopted provided in its first subdivision that:

"Any person who shall place any female in the charge or custody of any other person for immoral purposes or in a house of prostitution with intent that she shall live a life of prostitution; or any person who shall compel any female to reside with him or with any other person for immoral purposes, or for the purposes of prostitution, or shall compel any such female to reside in a house of prostitution or compel her to live a life of prostitution, is punishable by a fine of not less than one thousand dollars nor more than

five thousand dollars, or by imprisonment for not less than one year nor more than three years, or by both such fine and such imprisonment."

The second subdivision provided that:

"Any person who shall receive any money or other valuable thing' for or on account of placing in a house of prostitution or elsewhere any female for the purpose of causing her to cohabit with any male person or persons to whom she is not married shall be guilty of a misdemeanor."

The third subdivision provides that:

"Any person who shall pay any money or other valuable thing to procure any female for the purpose of placing her for immoral purposes in any house of prostitution or elsewhere against her will, shall be fined not less than one thousand dollars nor more than five thousand dollars, and be imprisoned for a period not less than one year, nor more than three years."

Subdivision 4, which completes the penal provisions of the original act, provides that:

"Every person who shall knowingly receive any money or other valuable thing for or on account of procuring and placing in the custody of another person for immoral purposes any woman, with or without her consent, is punishable by imprisonment not exceeding five years and a fine not exceeding one thousand dollars."

[2] The above provisions were re-enacted in the Penal Law by chapter 88 of the Laws of 1909, without change, and it must be entirely obvious that the purpose of the Legislature was not to place in the hands of two or more prostitutes, voluntarily accompanying one or more men upon a night's debauch, the power to blackmail these erring brothers, under threat of a term in state prison, but rather to reach and punish those conscienceless vampires who make merchandise of the passions of men. The legislation dealt with the systematizing of prostitution and concubinage upon a commercial basis; it sought to prevent prostitution and concubinage as a business, and had no connection whatever with any merely individual cases of sexual indulgence. The statute was, as its title indicated, directed against crimes "against public decency and good morals and designed to prevent the compulsory prostitution of women," and the sections of the Penal Code and of the Penal Law, which have carried these and other provisions hereinafter to be considered, have always been headed, "Compulsory Prostitution of Women." The letter and spirit of the original statute sought to protect women against "compulsory prostitution"—against a system which, by the use of money and other valuable considerations, it was believed, was enabled to largely coerce and control the will of unfortunate women. It was directed against a system; it dealt with permanent conditions, not with individual and voluntary associations, however disgusting.

[3] The first section shows the purpose; it was provided that "any person who shall place any female in the charge or custody of any other person for immoral purposes, or in a house of prostitution with intent that she shall live a life of prostitution," shall be punished as prescribed. She must be placed in "a house of prostitution with the intent that she shall live a life of prostitution" in order to be within the protection of the original statute. The mere taking of a female

to a house of prostitution by a man and remaining with her overnight, or for any period, would not constitute the offense; it would require in addition that she be placed there with the intent that she should "live a life of prostitution," and it is well understood that mere meretricious relations with one man do not constitute prostitution. People ex rel. Howey v. Warden, etc., 207 N. Y. 354, 359, 363, 101 N. E. 167, and authority there cited. The other sections merely relate to the supposed features of the system against which the legislation was directed, and the whole act contemplated that there should be an element of force or consideration operating as a coercive power, as distinguished from the individual acts of men and women acting along the lines of their particular inclinations.

[4] That the Legislature did not contemplate a departure from the spirit of the act is evidenced by the fact that in the revision of the section in 1910 (chapter 618, Laws of 1910) the amending act was entitled "An act to amend the penal law in relation to compulsory prostitution of women," and the act is to be understood in connection with its history and purposes. No one subdivision is to be picked out and literally applied as the district attorney, or even the parties, may suppose it to read; but the entire section, relating to one general subject, is to be read and interpreted. It is a well-settled rule of statutory construction that an original statute with all its amendments must be read together and viewed as one act passed at the same time (Lyon v. M. R. Co., 142 N. Y. 298, 303, 37 N. E. 113, 25 L. R. A. 402, and authority there cited), and so we are to give such construction to subdivision 3 of the act, under which this indictment was found, as the act, considered as a whole, suggests. The title of the act being in harmony with the title of the original act, which made the matter of "compulsory prostitution of women" the keynote of the statute, it is clear that we should look to find the two enactments designed to accomplish the same general purpose, and the section of the Penal Law imposing, as it does, severe penalties, should be construed like other penal laws. Its scope should not be enlarged by construction or implication, and the courts should not impose the penalty except in cases where the plain language of the section requires it. Whitaker v. Masterson, 106 N. Y. 277, 280, 12 N. E. 604, and authorities there cited.

[5] It is quite plain from a reading of the act of 1910, now constituting section 2460 of the Penal Law, that it was designed to more .fully comply with the title .of the original act, which declared that it was "designed to prevent compulsory prostitution of women, and the importation of women from foreign countries, et cetera, for immoral purposes"; for we find the first section dealing with the "importation of women and girls into this state or the exportation of women and girls from this state for immoral purposes," where it was entirely lacking in the original act, except for the suggestion in the title. Such importation or exportation is prohibited, and it is further provided that:

"Whoever shall induce, entice or procure, or attempt to induce, entice or procure, to come into this state or to go from the state, any woman or girl for the purpose of prostitution or concubinage, or for any other immoral pur-

pose, or to enter any house of prostitution in this state, or any one who shall aid any such woman or girl in obtaining transportation to or within this state, shall be deemed guilty of a felony," etc.

Here the language "induce, entice or procure . * * * to come into this state or to go from the state, any woman or girl for the purpose of prostitution or concubinage, or for any other immoral purpose, or to enter any house of prostitution in this state," is appropriate for the purpose for which it was intended. It does not deal with the problem of compulsory prostitution of women, but with the "importation of women from foreign countries, et cetera, for immoral purposes," and makes any of the enumerated agencies or purposes a felony. It is not concerned with any element of coercion; it is dealing with women who are brought into the state, or taken out of it, for immoral purposes; it makes commerce in immorality, with or without the consent of the women, a felony; the penalty is denounced against any one who "shall aid any such woman or girl in obtaining transportation to or within this state," and undoubtedly supplies a defect in the original enactment, as indicated by its title.

The second subdivision is in many respects the same as subdivision 1 of the original act, though slightly expanded in language. It provides:

"Any person who shall place any female in the charge or custody of any other person for immoral purposes or in a house of prostitution or elsewhere with intent that she shall live a life of prostitution; or any person who shall compel or shall induce, entice or procure, * * * or compel any female to reside with him or with any other person for immoral purposes, or for the purposes of prostitution, or shall compel or attempt to induce, entice, procure or compel any such female to reside in a house of prostitution, or compel or attempt to induce, entice, procure or compel her to live a life of prostitution shall be guilty of a felony," etc.

This clearly deals with the title subject of both acts, with the "compulsory prostitution of women"; and it is to be observed that it all deals with a permanent condition, as distinguished from incidental concessions to lasciviousness. It is when the woman is placed in the custody or charge of another person "for immoral purposes or in a house of prostitution or elsewhere with the intent that she shall live a life of prostitution," or when any person shall "compel or shall induce, entice or procure * * * any female to reside with him or with any other person for immoral purposes, or for the purposes of prostitution," and like cases, that the penalty is denounced against any such person, and we are to bear in mind that prostitution is not a mere meretricious relation with a single individual, but "common, indiscriminate, meretricious commerce with men." People ex rel. Howey v. Warden, etc., 207 N. Y. 354, 363, 101 N. E. 167. It is when the conduct takes on a permanent character, when the active party dominates and dedicates the life of a woman to immorality, that the law imposes the severe penalty of "imprisonment for not less than two years nor more than twenty years and by a fine not exceeding five thousand dollars." Subdivision 2, § 2460.

This subdivision takes care of the case of a woman who is placed "in a house of prostitution or elsewhere with intent that she shall

live a life of prostitution," it provides for the case of a woman who is compelled or induced to reside with the person acting or "with any other person for immoral purposes, or for the purposes of prostitution," and it likewise denounces a penalty against any one who shall "compel or attempt to induce, entice or procure or compel any such female to reside in a house of prostitution or to compel or attempt to induce, entice, procure or compel her to live a life of prostitution"; and it would be very remarkable if the Legislature, in revising the original act in relation to the "compulsory prostitution of women," should, in the very next subdivision, provide exactly the same penalty for a lesser degree of compulsion. All of the provisions of this particular subdivision suggest the use of force; it is where the woman is compelled, induced, or enticed—where she is subjected to the coercion of the system or to the individual will of some dominating person—that the Legislature has provided the penalty above quoted. Yet the next subdivision repeats the penalty for "any person who shall induce, entice or procure, or attempt to induce, entice or procure any woman or girl for the purpose of prostitution or concubinage, or for any other immoral purpose, *or to enter any house of prostitution in this state*"—a proposition entirely at war with that of the first clause of the second subdivision, which requires, as a condition of the penalty, that the woman shall be placed "in a house of prostitution or elsewhere with intent that she shall live a life of prostitution."

[6] Obviously the Legislature never intended to provide exactly the same penalty for inducing, enticing, or procuring a woman to enter "any house of prostitution in this state," that it had already denounced against one who had placed a woman in a house of prostitution with the intent that she should live a life of prostitution; and we must look farther for the true construction of subdivision 3. We think this is a case where the statute, obviously a patchwork affair, is subject to the rule that words which fail to have any useful purpose may be eliminated in arriving at the intent of the Legislature. Riggs v. Palmer, 115 N. Y. 506, 22 N. E. 188, 5 L. R. A. 340, 12 Am. St. Rep. 819. If we read subdivision 3 that "any person who shall induce, entice or procure, or attempt to induce, entice or procure, any woman or girl for the purpose of prostitution or concubinage, or for any other immoral purpose, to enter any house of prostitution in this state, shall be deemed guilty of a felony," etc., we have a rational provision in reference to women within the state, in harmony with a like provision in the first subdivision. The first subdivision, dropping the botchy and immaterial provisions, so far as this discussion is concerned, provides that:

"The importation of women and girls into this state * * * for immoral purposes is hereby prohibited, and whoever shall induce, entice or procure, or attempt to induce, entice or procure, to come into this state * * * any woman or girl for the purpose of prostitution or concubinage, or for any other immoral purpose, or to enter any house of prostitution in this state, or any one who shall aid any such woman or girl in obtaining transportation to or within this state, shall be deemed guilty," etc.

Here the penalty is prescribed for those who "induce, entice or procure" women to come into this state for any of these immoral pur-

poses; the offense is not for procuring a woman to enter a house of prostitution, but for inducing, enticing, or procuring her to come from without the state for the purpose of prostitution or concubinage, or to enter any house of prostitution in this state, or other immoral purpose.

[7] Subdivision 3, on the other hand, deals with women or girls who are already within the state, and as to these "any person who shall induce, entice or procure * * * any woman or girl for the purpose of prostitution or concubinage or for any other immoral purpose" to enter any house of prostitution in this state, is properly made subject to the same penalty as that prescribed by subdivision 2; for it is essentially the same offense as placing a woman in a house of prostitution with the intent that she shall live a life of prostitution. It is the intent with which a woman or girl is brought into the state, or is induced, enticed, or procured to enter a house of prostitution, which gives the gravamen of the crime.

Any other construction of subdivision 3 would make it a felony for any one to induce a woman or girl to enter a house of prostitution, no matter what the occasion, and there are many good and noble women who are daily induced to enter places of this character in carrying on the many charitable and philanthropic enterprises which are to-day engaging the attention of the civilized world. It is not the entering of a house of prostitution in and of itself which constitutes the offense, but the entering of a house of prostitution for the purpose of prostitution or other immoral purpose by the inducement of a third person, which constitutes the crime, and this is distinct from the question of whether any money or other valuable consideration is involved. The purpose of the statute is to protect women against all forms of "compulsory prostitution," and it very properly recognizes the fact that a woman who is induced to enter a house of prostitution for the purpose of prostitution or other immorality is brought within a coercive influence which is calculated to induce a life of prostitution, such as is denounced in the second subdivision.

This view of the statute is made clearer by the subsequent provisions; subdivision 4 providing that "any person who shall receive any money or other valuable thing for or on account of placing in a house of prostitution or elsewhere any female for the purpose of causing her to cohabit with any male person or persons to whom she is not married shall be guilty of a felony," and subdivision 5 enacting that "any person who shall pay any money or other valuable thing to procure any female for the purpose of placing her for immoral purposes in any house of prostitution or elsewhere, with or without her consent, shall be guilty of a felony," etc. Likewise it is provided in subdivision 6 that:

"Any person who shall knowingly receive any money or other valuable thing for or on account of procuring and placing in the custody of another person for immoral purposes any woman, with or without her consent, shall be guilty of a felony," etc.

It will thus be seen that, by merely dropping out the word "or" from the third subdivision, we have a complete and harmonious scheme

calculated to discourage "compulsory prostitution of women," and that with the word placed as it is in that section it becomes absurd and unreasonable, and we are bound, therefore, to read the act as it was intended. This requires a holding that the facts necessary to constitute the crime denounced by the third subdivision would require that the defendant should have induced, enticed, or procured the complaining witness to enter a house of prostitution for the purpose of prostitution or other immorality, and no such facts are alleged or proved. The indictment charges the defendant with having "feloniously" induced and procured Frances Decker for the purpose of prostitution, which is not made a felony, and that he—

"did advise her to have unlawful sexual intercourse for money with men, and did feloniously induce and procure her to have unlawful sexual intercourse for money with a man whose name to this grand jury is unknown, and whom he brought to her for that purpose."

The statute under consideration does not make this a crime. There is nothing in the statute dealing with the case of one male being bringing another male being to a common prostitute for immoral purposes, and this seems to be the sum of the defendant's offending. He appears to have become the agent of these two girls to bring men to them, and the fact, if it be a fact, that he advised them to take money from these men, does not bring it within the letter or the spirit of the statute here under consideration. It would have been a crime for the defendant to take money for procuring either of these girls to be placed in the custody of any one of the various men who were called in for immoral purposes; but this is not charged. There is merely an effort to give the character of prostitution to the conduct of the group by alleging that the defendant induced the girls to demand money; but it constitutes no part of the offense with which the statute deals, and, if all of the matters alleged and testified to were true, it would not bring the defendant within the intent of the law as laid down in subdivision 3 of section 2460 of the Penal Law, or any other part of that section, though he might come within the provisions of section 1148 of the Penal Law, which makes it a misdemeanor for—

"every male person who lives wholly or in part on the earnings of prostitution, or who in any public place solicits for immoral purposes."

In this view of the case it is not necessary to follow the disgusting details of the nights of dissipation; it is enough that the indictment does not charge a crime as defined by section 2460 of the Penal Law. "Every criminal, however vile," say the court in People v. Plath, 100 N. Y. 590, 597, 3 N. E. 790, 794 (53 Am. Rep. 236), "has a right to require that the elements of his offense shall be clearly defined by law and established by legal proof before he can be convicted thereof, and until then he may safely assert his immunity from punishment for any offense which is not thus defined and proved. The defendant in this case is entitled to the same presumption of innocence which prevails in other cases, and we are constrained to say that evidence has not been given here rebutting such presumption."

The judgment appealed from should be reversed, and the prisoner discharged; the indictment failing to charge any crime which is clearly defined by law. All concur, except HOWARD, J., dissenting.