STATE, Respondent, v. EVA BOWMAN, Appellant.

[235 Pac. 577.]

INFORMATION—SUFFICIENCY OF—STATUTES—CONSTRUCTION—EVIDENCE—
SUFFICIENCY.

1. In order that an information charging a statutory offense in the language of the statute may be sufficient it must fully, directly and expressly contain all the elements constituting the offense, and if the exact language of the statute fails to do this, the wording of the statute may be expanded, consonant with its intent, to sufficiently describe the crime.

2. C. S., sec. 8271, par. 2, is not limited to acts against the will and consent of a female, since voluntary acts are defined therein as well as involuntary acts.

3. The word "or" following the words "immoral purpose" found in the second paragraph of C. S., sec. 8271, which reads that "any

Publisher's Note.

1. Form and sufficiency of indictment, see notes in 94 Am. Dec. 253; 3 Am. St. 279.

person who shall induce, entice or procure, or attempt to induce, entice or procure any woman or girl for the purpose of prostitution or concubinage, or for any other immoral purpose, or to enter any house of prostitution in this state, shall be deemed guilty of a felony," should be treated as surplusage, since by such omission the plain intent of the statute is expressed.

4. Evidence examined and *held* sufficient to justify the verdict and judgment based thereon.

APPEAL from the District Court of the Third Judicial District, for Ada County. Hon. M. I. Church, Judge.

Defendant was convicted of enticing, inducing and procuring a female to enter a house of prostitution for the purpose of prostitution. *Affirmed.*

Reddoch & Hunter, for Appellant.

The information is duplicitous. (C. S., secs. 8271, 8829; 12 Stand. Proc. 509; *People v. Plath,* 166 Cal. 227, 135 Pac. 954; *United States v. American Naval Stores Co.,* 186 Fed. 592; *State v. St. Louis & S. F. R. Co.,* 83 Ark. 254, 103 S. W. 625; *State v. Goodwin,* 33 Kan. 538, 6 Pac. 899; *State v. Adams,* 179 Mo. 334, 78 S. W. 588; *State v. Nicholas,* 124 Mo. App. 330, 101 S. W. 618; *State v. Dennison,* 60 Neb. 192, 82 N. W. 628.)

The information does not state facts sufficient to constitute a public offense. (16 C. J. 68; *State v. Satterlee,* 110 Kan. 84, 202 Pac. 636, *State v. Lantz,* 90 W. Va. 738, 111 S. E. 766, *State v. Diamond,* 27 N. M. 477, 202 Pac. 988, and cases therein cited; *Wabash Ry. Co. v. O'Bryan,* 285 Fed. 583.)

The information does not set forth any offense in ordinary and concise language and in such a manner as to enable a person of common understanding to know what is intended, nor does it set forth the particular circumstances of any offense. (C. S., secs. 8825–8827; *State v. Topham,* 41 Utah, 39, 123 Pac. 888; *Hipsman v. State* (Okl. Cr.), 205 Pac. 1103; *State v. Dodd,* 84 Wash. 436, 147 Pac. 9; *Kennedy v.*

*State,* 86 Tex. Cr. 450, 216 S. W. 1086; *State v. Gesas,* 49 Utah, 181, 162 Pac. 366.)

It seems evident that the legislature adopted the statute as it intended to adopt it, and this being so, the court should pass upon it as it finds it. (36 Cyc. 1106, 1111.)

A. H. Conner, Attorney General, and · James L. Boone, Assistant, for Respondent.

It is a general rule of law that in construing a statute the court will take into consideration the reason of the law, the object and purpose of the same, and the object of the legislature in enacting the same. (*Rural H. S. D. No. 1 v. School D. No. 37,* 32 Ida. 325, 182 Pac. 859.)

A statute, obviously a patchwork affair, is subject to the rule that words which fail to have any useful purpose may be eliminated in arriving at the intent of the legislature. (*Riggs v. Palmer,* 115 N. Y. 506, 12 Am. St. 819, 22 N. E. 188, 5 L. R. A. 340; *People v. Draper,* 169 App. Div. 479, 154 N. Y. Supp. 1034; *People v. Rogers,* 183 App. Div. 604, 170 N. Y. Supp. 825.)

It is the duty of the courts to give effect, if possible, to every word of the written law. But if a word or clause be found in a statute which appears to have been inserted through inadvertence or mistake and if the statute is complete and sensible without it, such word or clause may be rejected as surplusage. (Black on Interpretation of Laws, p. 83.)

A crime may be stated in the words of the statute. (*State v. McMahon,* 37 Ida. 737, 219 Pac. 603; *State v. O'Neil,* 24 Ida. 582, 135 Pac. 60; *State v. Rogers,* 30 Ida. 259, 163 Pac. 912; *State v. Lundhigh,* 30 Ida. 365, 164 Pac. 690; *People v. Brown,* 61 Cal. App. 748, 216 Pac. 58; *People v. De Martini,* 25 Cal. App. 9, 142 Pac. 898.)

The information filed in this case satisfied the Idaho statutes. (*People v. Brown, supra; People v. De Martini, supra; Jefferson v. State* (Okl. Cr.), 208 Pac. 1038.)

BAUM, District Judge.—Appellant was convicted of the crime of procuring, enticing and inducing a girl of sixteen years of age to enter a house of prostitution for the purpose of prostitution, and was sentenced to imprisonment in the state penitentiary for a term of not less than two years and not more than five years, and she appeals from the judgment.

That portion of C. S., sec. 8271, under which appellant was charged and convicted, reads:

"Any person who shall induce, entice or procure or attempt to induce, entice or procure any woman or girl for the purpose of prostitution or concubinage, or for any other immoral purpose, or to enter any house of prostitution in this state, shall be deemed guilty of a felony, and, on conviction thereof, shall be punishable by imprisonment in the state prison for a period of not less than two years nor more than 20 years, or by a fine of not less than $1,000 nor more than $5,000, or by both such fine and imprisonment."

Twenty-five assignments of error are specified and relied upon for a reversal, and for the purpose of this opinion such assignments of error will be grouped into four main subdivisions, namely:

1. Error in overruling demurrer.

2. Error in admission of testimony.

3. Error in giving certain instructions to the jury.

4. Insufficiency of the evidence to justify the verdict and sustain the judgment.

Appellant maintains that the information fails to state a public offense, and that the state has taken one alleged act or omission and segregated same into several separate and distinct offenses; that the information does not conform to the requirements of C. S., sec. 8825, subd. 2, in that a statement constituting the alleged offense is not set forth in ordinary and concise language and in such a manner as to enable a person of common understanding to know what is intended; and that it does not conform to requirements of C. S., sec. 8827, subd. 3, in that the particular circumstances of ·the

alleged offense, or of any offense, are not set forth therein; and that the statute is void for uncertainty.

Chap. 205, Sess. Laws 1911, p. 673, contains eleven sections, the same being entitled,—

"An Act to prevent the importation into this state or the exportation from this state of women and girls for immoral purposes; prohibiting the keeping, maintaining, controlling, supporting or harboring of any woman or girl for immoral purposes, and prescribing the punishment therefor."

This act became C. S., chap. 303, art. 2, entitled "Procurement for Prostitution," and comprises secs. 8270 to 8277, inclusive.

The only test is not that an information follows the statute, but that it is in compliance with the law prescribing the requisites of an information. An information, under our statute, is the written statement of the prosecuting attorney accusing a person therein named of some act or omission which, by law, is declared to be an offense.

The accused is entitled to a statement of the facts relied upon, and if these are not contained in the statute denouncing the offense they must be supplemented by the pleader drawing the indictment or information. The statement of a legal conclusion will not suffice. (1 Wharton's Criminal Procedure, 10th ed., p. 240, sec. 196; State v. Topham, 41 Utah, 39, 123 Pac. 888.) And such has been the holding of our own court. (State v. Scheminisky, 31 Ida. 504, 174 Pac. 611.) Therefore, does the information in the instant case inform the defendant of the particular acts or omissions complained of? The information charges that appellant did "willfully, unlawfully, feloniously and knowingly—by then and there promising Rhoda Boren, a girl of 16 years of age that she could make money by entering a house of prostitution . . . . and by then and there furnishing said girl a lunch and drinks of liquor free of charge, and by then and there offering to assist said girl in leading the life of a prostitute and giving said girl free transportation to said house—induce, entice and procure said girl, to wit, Rhoda Boren, for the purpose of prostitution, to enter a house of prostitution, . . . .

to wit, that certain house of prostitution known and desig-
nated as 1221 Grove St., Boise, Ada county, Idaho, said de-
fendant . . . . then and there knowing said house to be a
house of prostitution."

C. S., sec. 8834, contains the following:

"That the act or omission charged as the offense is clearly
and distinctly set forth in ordinary and concise language,
without repetition, and in such a manner as to enable a per-
son of common understanding to know what is intended.

"That the act or omission charged as the offense is stated
with such a degree of certainty as to enable the court to pro-
nounce judgment upon conviction, according to the right of
the case."

All that is necessary is that the information be sufficient
to advise the defendant of the nature of the charge against
him, and that it describes the offense with such particularity
as to serve as a shield in case of a second prosecution for the
same offense. (*State v. Lottridge,* 29 Ida. 53, 155 Pac. 487;
*State v. Andrus,* 29 Ida. 1, 156 Pac. 421.)

The allegation, "offering to assist said girl in leading a
life of a prostitute" is too general and indefinite, and failed
to inform appellant as to just how she assisted or what she
offered to do, but it cannot be said that the other averments
are so indefinite and uncertain that appellant was not ad-
vised of the particular nature of the charge filed against her.
(*State v. Mickey,* 27 Ida. 626, 150 Pac. 39.)

Clarity has always been held to be an essential to a valid
criminal statute. The same may be said as to the charge of
inducing, enticing and procuring a woman to enter a house
of prostitution for the purpose of prostitution. The statute
in question has been bunglingly drawn, as has been aptly
stated by Justice Smith in the case of *People v. Rogers,* 183
App. Div. 604, 170 N. Y. Supp. 825; and unless the same
can be interpreted so as to define by a clear statement the
crime intended to be specified, it can furnish no basis for any
prosecution.

The following is a significant expression of this court as
to a general rule of law concerning the construction of a

statute: "It is a general rule of law that in construing a statute the court should take into consideration the reason for the law,—that is, the object and the purpose of the same, and the object and contemplation of the legislative body in enacting the same." (*Wood v. Ind. School Dist. No. 2,* 21 Ida. 734, 124 Pac. 780; *Rural H. S. D. No. 1 v. School District No. 37,* 32 Ida. 325, 182 Pac. 859.)

In Black on Interpretation of Laws, p. 76, sec. 33, it is said: "And another important and useful rule is that, where a general policy or purpose is plainly declared in a series or system of statutes, any special provisions in any of the statutes should, if possible, be given a construction which will bring them in harmony with that policy or purpose."

The ostensible purpose of chap. 205, Sess. Laws 1911, now C. S., secs. 8270 to 8277, inclusive, was to deal with prostitution in its every phase, to strike at the controlling element or force back of the prostitutes themselves, to have a law broad enough in its scope to cover the entire subject. Sec. 1 of the act as originally passed treats with the importation into and the exportation of women from the state for immoral purposes. Sec. 2 deals with the placing of women in a house of prostitution, with the intent that such women live a life of prostitution, also any attempt to induce, procure or compel any female to reside in a house of prostitution, while sec. 4 deals with receiving money, etc., for or on account of placing a female in a house of prostitution. Sec. 5 deals with persons who pay money, etc., to procure a female for the purpose of placing her in a house of prostitution or elsewhere for immoral purposes. Sec. 6 deals with a person who shall knowingly receive any money, etc., on account of procuring and placing in the custody of another person any female, with or without her consent, for immoral purposes, and sec. 7 deals with persons who hold or detain, etc., in a house of prostitution or elsewhere, any female for the purpose of compelling such female to pay toll, etc., while sec. 8 deals with the subject of accepting earnings of prostitutes, and sec. 9 deals with persons who live in whole or in part upon the earnings of a prostitute; and the last section deals with harboring pros-

titutes. Obviously the intention of the legislature, by sec. 3, now the second paragraph of C. S., sec. 8271, was to provide a penalty for inducing, enticing and procuring a woman or girl to enter a house of prostitution for the purpose of prostitution, or for any other immoral purpose, and not to make it an offense and provide a penalty for any and every one that caused a woman to enter such a house, no matter for what purpose. Frequently women doing charitable work, in an endeavor to stamp out prostitution, enter such houses with proper motives and purposes. So to make said paragraph consonant with reason, it was undoubtedly the intention of the legislature to have said paragraph read as follows:

"Any person who shall induce, entice or procure, or attempt to induce, entice or procure, any woman or girl for the purpose of prostitution or concubinage, or for any other immoral purpose to enter any house of prostitution in this state, shall be deemed guilty of a felony. . . . ."

The word "or," omitted following the words "immoral purpose," is surplusage and should be disregarded.

A somewhat analogous act was passed by the legislature of New York in 1906 and was thereafter, in 1909, re-enacted without change in the penal law by chap. 88, Laws of 1909. In 1910, by chap. 618, Laws of 1910, the legislature of that state amended the law, and as the same now stands the New York statute, sec. 2460, is divided into nine sections, and sec. 3 is analogous to the second paragraph of C. S., sec. 8271. In *People v. Draper*, 169 App. Div. 479, 154 N. Y. Supp. 1034, where the supreme court of New York passed on the validity of the section in question, it was said:

"Obviously the legislature never intended to provide exactly the same penalty for inducing, enticing, or procuring a woman to enter 'any house of prostitution in this state,' that it had already denounced against one who had placed a woman in a house of prostitution with the intent that she should live a life of prostitution; and we must look farther for the true construction of subdivision 3. We think this is a case where the statute, obviously a patchwork affair, is sub-

ject to the rule that, words which fail to have any useful purpose may be eliminated in arriving at the intent of the legislature. (*Riggs v. Palmer,* 115 N. Y. 506, 12 Am. St. 819, 22 N. E. 188, 5 L. R. A. 340.) If we read subdivision 3 that 'any person who shall induce, entice or procure, or attempt to induce, entice or procure, any woman or girl for the purpose of prostitution or concubinage, or for any other immoral purpose, to enter any house of prostitution in this state, shall be deemed guilty of a felony,' etc., we have a rational provision . . . . ''

And again, in the case of *People v. Rogers, supra,* wherein the supreme court of New York again passed upon sec. 2460 of the penal law, state of New York, it was said:

''If the statute cannot be interpreted to define by a clear statement the crime intended to be specified, the statute itself can furnish no basis for any prosecution. If, on the other hand the word 'or,' before the words 'to enter any house of prostitution,' be omitted, the statute then becomes perfectly clear, and a crime is specifically stated, to wit, the inducement or enticement or procurement of a female for immoral purposes to enter any house of prostitution in the state. That this word may be omitted in the construction of the statute is in accordance with the rule laid down by Black on Interpretation of Laws, at page 83, which says:

'' 'It is the duty of the courts to give effect, if possible, to every word of the written law. But if a word or clause be found in a statute, which appears to have been inserted through inadvertence or mistake, and which is incapable of any sensible meaning, or which is repugnant to the rest of the act, and tends to nullify it, and if the statute is complete and sensible, without it, such word or clause may be rejected as surplusage.'

''It is also held that words may be interpolated in a statute, for the purpose of making the statute sensible and effective. (Black on Interpretation of Laws, p. 84.) This was held to be the proper construction of this statute in *People v. Draper,* 169 App. Div. 479, 154 N. Y. Supp. 1034.''

This principle of statutory construction is approved by our own court in the case of *Carlson v. Mullen,* 29 Ida. 795, 162 Pac. 332, wherein it is stated:

" . . . . Where a word, clause or sentence appears in a statute which clearly defeats the intention of the legislature and which may be stricken out or entirely omitted without in any manner defeating the object or purpose of the statute, and where the intention of the legislature can be definitely determined from the statute, with the word, clause or sentence stricken out, this may be done."

A brief statement of the facts necessary to a discussion of the other questions involved is as follows: The prosecuting witness, Rhoda Boren, a young girl of sixteen years of age, whose home was at Oakley, Idaho, on the fifteenth day of January, 1923, came to the city of Boise, and upon her arrival took a taxicab and went directly to the home of appellant, at which place she was served with a lunch and loaned money by appellant with which to pay her taxicab fare. Thereafter she had supper at appellant's home with the family, it consisting of appellant and her two sons, and thereafter and during the evening a party of "inside friends" gathered and the evening was spent in dancing. That night Miss Boren slept with appellant, and between the time of her arrival and the following morning certain conversations took place between the two pertaining to what she should do, and also what name she should use. Thereafter, and on the following day, one Cora Gaskill was brought to the home of appellant by one of appellant's sons, and after some conversation the prosecuting witness accompanied Mrs. Gaskill to her home, having been taken there in the automobile belonging to appellant and driven by a son of appellant. After arriving there certain instructions were given the girl as to how she should demean herself, at which home she stayed until some few days later, during all of which time she was practicing prostitution, when the officers of the city of Boise took her in charge and detained her in the Salvation Army home for women.

An examination of assignments of error 2 to 22, which relate to the admission of testimony and the giving of certain instructions upon the court's own motion, discloses no irregularities or error sufficient to warrant a reversal of the cause. Considerable evidence was admitted which was immaterial, but we are of the opinion appellant was not prejudiced thereby, and the instructions of the court, with the exception of instruction No. 9, seem to be a correct declaration of the law applicable to the testimony adduced at the trial and were not erroneous. The jury, in view of the other instructions given and the fact that they were advised not to single out any one instruction as stating all of the law in the case, but that the instructions were to be taken together as a whole, could not have been misled by the giving of instruction No. 9. Therefore, any error that was committed was harmless and not prejudicial.

Appellant contends, assignment 23, that the evidence is insufficient to support the verdict and judgment. If we were to adopt appellant's theory, with its necessary implications, and accordingly assume that coercion, intimidation or constraining influence was necessary, then, of course, appellant's theory is correct. We do not understand that it is necessary to coerce and intimidate a party so as to make the actor under the section in question guilty. The statute is not limited to acts against the will and consent of the woman, since voluntary acts are defined therein as well as involuntary acts. It is the intent with which a woman is induced, enticed or procured to enter a house of prostitution which is the gravamen of the crime.

To gather the intent of appellant one must consider the entire record, and, considering the record under this rule, it appears to us that there is only one conclusion that can be reached, namely, that the acts of appellant were such that Rhoda Boren was induced, enticed and procured to enter the house in question. The evidence discloses that the house in question was a house of prostitution, and that appellant was a frequent visitor and on intimate terms with Cora Gaskill, the keeper thereof. Appellant's own evidence as to the rea-

son Rhoda Boren· was going to the house, as well as to the kind of a house it was, is very convincing to· our minds that appellant fully understood why Rhoda Boren was entering the house, and for what particular purpose.

Lastly, appellant maintains that the verdict and judgment are contrary to and in violation of law. Without further discussion let us say that our remarks so far dispose of this alleged error.

Upon the record before us, we conclude that the information charges only one offense, namely, inducing, enticing and procuring Rhoda Boren to enter a house of prostitution for the purpose of prostitution; that the evidence was sufficient to warrant the jury in finding appellant guilty of such an offense; that the section of the statute under which appellant was charged is not void for uncertainty; and that the verdict and judgment should be upheld, and it is so ordered.

William A. Lee, ·C. J., Wm. E. Lee, Budge and Givens, JJ., concur.

Petition for rehearing denied.