THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* JOSEPH ODIERNO, Defendant.

County Court, Queens County, January 12, 1938.

*Charles P. Sullivan, District Attorney* [*J. Irwin Shapiro* of counsel], for the plaintiff.

*Alexander Del Giorno,* for the defendant.

COLDEN, J. The defendant, a married man, has been indicted by the grand jury for a violation of subdivision 2 of section 2460 of the Penal Law. He now moves for an inspection of the grand jury minutes or, in the alternative, for a dismissal of the indictment.

A reading of the grand jury minutes reveals that the complaining witness, a girl eighteen years of age, met the defendant in Hammondton, N. J., on August 21, 1937; that at the very first meeting she went to a hotel in Atlantic City, where she stayed with the defendant overnight and had intercourse with him. It appears that thereafter the complainant and the defendant became even more friendly, and that they drove to New York and rented a furnished room in Queens county, where they resided as husband and wife. This continued for a period of one week, when the parties moved to another furnished room, also in Queens county, and in which they again lived as husband and wife.

The complainant's testimony as to her acts of intercourse with the defendant are sufficiently corroborated by the landlady who rented the complainant and the defendant one of the rooms in question and to whom they represented that they were husband and wife.

Section 2460 of the Penal Law, under which this defendant has been indicted, is headed " Compulsory Prostitution of Women." It has heretofore been held, however, that the fact that the title of said section refers to " Compulsory Prostitution " does not limit the statute to acts against the will and consent of the woman involved, since voluntary acts are therein properly defined. (*People* v. *Fegelli*, 163 App. Div. 576; affd., 214 N. Y. 670.)

In interpreting the statute in question, section 2460 of the Penal Law (Laws of 1910, chap. 618), one should take into consideration its history and purpose. As the court said in *People* v. *Fegelli* (*supra*):

" In considering this question resort may be had to the investigation and reports made public in the last ten years, showing the wide extent of commercialized prostitution. The evil of exploiting prostitution by taking toll of the wages of women who make themselves common, which by such incentives for profit tends to systematize and extend prostitution has been the subject of detailed reports and strong denunciation. (The Social Evil, being the Report of Committee of Fifteen [2d ed. (1912)], 220; Kneeland's ' Commercialized Prostitution,' chap. 4; The Social Evil in N. Y. City, Report of Committee of Fourteen [1910], 33.) These investigators pointed out that taking a percentage of the earnings of women engaged in prostitution was a leading cause of the growth and wide

extent of this vice in cities, so that to stop such division of these wages of vice would be the first step toward reducing the evil. (See, also, Report of Vice Commission of Philadelphia [1913], 5, 15, 16.) Even with the lax ideas on this subject on the Continent of Europe, this sharing of the earnings of prostitution is recognized as intensifying the spread of this evil; and in Vienna it seems to be prohibited. By the regulations of that city a prostitute may live in a house, or have apartments, on condition that the landlady ' must have no share of percentage in the proceeds of the vicious trade.' Brothels are not to be established ' in which the mistress of the house figures as the entrepreneur or manager of the business.' (Vienna Regulations, quoted by Flexner. ' Prostitution in Europe,' Appendix IV, pp. 432, 433. N. Y. 1914.)

" Prostitution among the ancients, and in the Middle Ages, has been exploited for the purpose of public revenue. In the great centers of modern civilization a system of professional exploiters of this evil leads to that intensity of vice which has always been a mark of a rotten or declining civilization. *All this was before the New York Legislature in 1910, which plainly intended by severe penalties to break up such an abhorrent traffic.*"

In view of the cited cases, it would appear that the acts of the defendant in this case do not bring him within the purview of section 2460 of the Penal Law. Fortification for this opinion is further found in the case of *People* v. *Draper* (169 App. Div. 479), in which the judgment of conviction was reversed and the accused discharged. The court there said:

" And it must be entirely obvious that the purpose of the Legislature was not to place in the hands of two or more prostitutes, voluntarily accompanying one or more men upon a night's debauch, the power to blackmail these erring brothers, under threat of a term in State prison, *but rather to reach and punish those conscienceless vampires who make merchandise of the passions of men. The legislation dealt with the systematizing of prostitution and concubinage upon a commercial basis; it sought to prevent prostitution and concubinage as a business, and had no connection whatever with any merely individual cases of sexual indulgence.* The statute was, as its title indicated, directed against crimes ' against public decency and good morals and designed to prevent the compulsory prostitution of women,' and the sections of the Penal Code and of the Penal Law which have carried these and other provisions hereinafter to be considered, have always been headed: ' Compulsory Prostitution of Women.' The letter and spirit of the original statute sought to protect women against ' compulsory prostitu-

tion;' against a system which, by the use of money and other valuable considerations, it was believed, was enabled to largely coerce and control the will of unfortunate women. *It was directed against a system; it dealt with permanent conditions, not with individual and voluntary associations, however disgusting.*

" The 1st subdivision shows the purpose; it was provided that ' any person who shall place any female in the charge or custody of any other person for immoral purposes or in a house of prostitution with intent that she shall live a life of prostitution,' shall be punished as prescribed. She must be placed in ' a house of prostitution with intent that she shall live a life of prostitution ' in order to be within the protection of the original statute. The mere taking of a female to a house of prostitution by a man and remaining with her overnight, or for any period, would not constitute the offense; it would require in addition that she be placed there with the intent that she should ' live a life of prostitution,' and it is well understood that mere meretricious relations with one man do not constitute prostitution. (*People ex rel. Howey* v. *Warden, etc.,* 207 N. Y. 354, 359, 363, and authority there cited.) *The other sections merely relate to the supposed features of the system against which the legislation was directed, and the whole act contemplated that there should be an element of force or consideration operating as a coercive power, as distinguished from the individual acts of men and women acting along the lines of their particular inclinations.*

" The 2d subdivision is in many respects the same as subdivision 1 of the original act, though slightly expanded in language. It provides: ' Any person who shall place any female in the charge or custody of any other person for immoral purposes or in a house of prostitution or elsewhere with intent that she shall live a life of prostitution; or any person who shall compel or shall induce, entice or procure,   *   *   *   or compel any female to reside with him or with any other person for immoral purposes, or for the purpose of prostitution or shall compel or attempt to induce, entice, procure or compel any such female to reside in a house of prostitution, or compel or attempt to induce, entice, procure or compel her to live a life of prostitution shall be guilty of a felony,' etc.

" This clearly deals with the title subject of both acts; with the ' compulsory prostitution of women;' *and it is to be observed that it all deals with a permanent condition as distinguished from incidental concessions to lasciviousness.* It is when the woman is placed in the custody or charge of another person ' for immoral purposes or in a house of prostitution or elsewhere with the intent that she

shall live a life of prostitution,' or when any person shall ' compel or shall induce, entice or procure * * * any female to reside with him or with any other person for immoral purposes, or for the purpose of prostitution,' and like cases, that the penalty is denounced against any such person, *and we are to bear in mind that prostitution is not a mere meretricious relation with a single individual, but ' " common indiscriminate, meretricious commerce with men." '* (*People ex rel. Howey* v. *Warden, etc.,* 207 N. Y. 354, 363.) It is when the conduct takes on a permanent character; when the active party dominates and dedicates the life of a woman to immorality that the law imposes the severe penalty of ' imprisonment for not less than two years nor more than twenty years and by a fine not exceeding five thousand dollars.' Penal Law, § 2460, subd. 2."

The evolution of section 2460 of the Penal Law, as it now exists, constitutes an attempt on the part of the Legislature to cope with the evil of commercialized prostitution. The statute in question was not intended to place the erring male at the mercy of the erring female, nor was it directed against individual or isolated acts of prostitution. Rather was it directed against influential offenders whose *business* was gain through prostitution; its purpose was to reach the systemization of prostitution on a commercial basis. In this case the record makes it clear that the acts of intercourse were not committed in connection with any systemization of prostitution on a commercial basis but were the acts of two immoral individuals. Under the facts submitted to the grand jury the defendant may be chargeable with some crime, but that crime is not compulsory prostitution as the same is envisaged in section 2460 of the Penal Law.

In view of the foregoing the indictment is dismissed, with leave to the district attorney to resubmit the matter to the same or another grand jury. Submit order.