[Criminal No. 935.   Filed February 21, 1944.]

[146 Pac. (2d) 211.]

## STATE OF ARIZONA, Appellant, v. JAMES GRANT HART, Appellee.

Mr. Joe Conway, Attorney General, Mr. Thomas J. Croaff, Assistant Attorney General, Mr. Harold R.

Scoville, County Attorney, and Mr. J. V. McCrory, Deputy County Attorney, for Appellant.

Mr. Thomas Glenn, and Mr. J. B. Sumter, for Appellee.

STANFORD, J.—Appellee was charged by information filed by the County Attorney of Maricopa County on February 12, 1943, with the crime of pandering, a felony committed as follows, to-wit:

"The said James Grant Hart on or about the 22nd day of January, 1943, and before the filing of this information at and in the County of Maricopa, State of Arizona, did then and there wilfully, unlawfully and feloniously place one Marta Bach, a female person in the charge and custody of a male person for immoral purposes; contrary to the form, force and effect of the statute in such cases made and provided and against the peace and dignity of the State of Arizona."

On the 20th day of February, 1943, the defendant filed in the Superior Court his demand for Bill of Particulars "for the reason that the information fails to inform him of the particulars of the offense sufficiently to enable him to prepare his defense or to give him such information as he is entitled to under the Constitution of this State," and on that date counsel stipulated and agreed "that the reporter's transcript of the testimony taken at the preliminary hearing shall constitute and suffice a sufficient bill of particulars." Also on the 20th day of February, upon the application of the County Attorney, he was authorized to furnish a Supplemental Bill of Particulars to be furnished on or before the 25th day of the month, said Supplemental Bill of Particulars to be in addition to the reporter's transcript heretofore stipulated to constitute the original Bill of Particulars.

On the 20th day of February defendant made a motion to quash the information "upon the ground that it appears from the Bill of Particulars furnished under the provisions of Section 153 of the Code [Rules] of Criminal Procedure [Code 1939, § 44–712] that the particulars stated do not constitute the offense charged in the information."

On the 25th day of February the additional Bill of Particulars was furnished by the County Attorney, reading in part as follows:

" . . . that the defendant Hart went to the room of Marta Bach, 218, and told the said Marta Bach that he had a $25.00 date for her in room 220;

"That the said Marta Bach went to room 220 and was admitted by the Lieutenant in whose room arrangements were then and there made between the said Marta Bach and the said Lieutenant for the act of sexual intercourse and the payment therefore. That the said Lieutenant did not have $25.00 in cash, so requested the defendant come to the room, which he did, and at that time and place the defendant cashed a check for the said Lieutenant in the sum of $25.00, which said $25.00 the Lieutenant gave to the said Marta Bach in the presence of the said defendant. The defendant then left the room and an act of intercourse ensued between the Lieutenant and the said Marta Bach; and subsequently a second act of intercourse occurred between the parties for which the Lieutenant paid the said Marta Bach ten more dollars;

"That by the above acts the said defendant James Grant Hart did then and there place her, the said Marta Bach, a female person, in the charge and custody of one Lieutenant Winfield H. Samuels for immoral purposes."

On the 27th day of February, 1943, the defendant filed a motion to quash the information upon the ground that it appears that it does not charge the defendant with the commission of an offense.

The Superior Court, upon denying the motion of the defendant to strike the Supplemental Bill of Particulars, did grant the motion to quash the information upon the ground and for the reason that the Supplemental Bill of Particulars furnished disclosed no offense was committed within the provisions of Section 43–4401, Arizona Code 1939, which is the section under which this information was filed.

The one assignment of error submitted by appellant herein was as follows:

"The Court erred in granting the Motion to Quash the information, for the reason that the information does charge a public offense, and the facts stated and the acts charged against the defendant in said supplemental Bill of Particulars are sufficient in law to constitute the offense charged, . . . "

The appellant claims that it is sufficient to describe this offense in the words of the statute. Section 43–4401, Arizona Code 1939, reads as follows:

"*Pandering*.—Any person who shall place any female in the charge or custody of any other person for immoral purposes, or in a house of prostitution with the intent that she shall lead a life of prostitution, or any person who shall compel any female to reside with him, or with any other person, for immoral purposes, or for the purpose of prostitution, or compel her to lead a life of prostitution, is guilty of pandering, . . . ."

The defendant is not charged with placing Marta Bach in a house of prostitution, nor is he charged with compelling her to reside with him, the defendant, or any other person for immoral purposes, nor is he charged with the violation of any other part of the section except placing her in charge of an army officer, and there is no compulsion referred to in that part of our statute under which this defendant is charged.

Among the cases cited by appellee are the cases of *People* v. *Draper,* 169 App. Div. 479, 154 N. Y. Supp. 1034, and the case of *People* v. *Odierno,* 166 Misc. 108, 2 N. Y. Supp. (2d) 99. These New York cases deal with a statute relating to "compulsion," but our law is much broader.

In the case of *People* v. *Cimar,* 127 Cal. App. 9, 15 Pac. (2d) 166, 16 Pac. (2d) 139, the defendant was convicted of pandering and the case was affirmed. In that case the information charged that he did " 'wilfully and unlawfully and feloniously procure for a female person . . . a place as an inmate of a house of prostitution.' " In that case the appellant contended that "the female in question was not procured to become an inmate of a house of prostitution against her will, but, upon the contrary, that she voluntarily entered and remained in the house." The court in that opinion said the following:

"Pandering is a synonym of the vulgar term 'pimping,' and consists of unlawfully procuring a female to engage in gratifying the lust of other individuals, as distinguished from fornication, rape, or seduction. 3 Bouvier's Law Dictionary [Rawle's Third Revision], p. 2592; 46 C. J. 1172; 74 A. L. R. 312, note. The circumstances constituting pandering ordinarily depend upon the language of the statute under which an accused person is charged. According to the provisions of that portion of the statute under which this defendant was charged with pandering, it was unnecessary to prove that the female was procured by him by means of force or fraud to become an inmate of the house of prostitution. It was not even necessary to prove that she became an inmate of the house against her will. . . . "

The appellee, in his brief, states that "the gravamen of the offense is the act of 'placing.' "

In the case of *State* v. *Hanes,* 84 Wash. 601, 147 Pac. 193, the defendant was charged under the following statute:

" 'Every person who shall place a female . . . in a house of prostitution with intent that she shall live a life of prostitution . . . shall be punished . . . .' " Rem. & Bal. Code § 2440.

And, the court in its opinion dwelling with the word "place" stated the following:

"Appellant contends that the word 'place' has a meaning more extended than a mere invitation to remain at a place; that it implies a restraint, either physical or moral. The law has no such restricted meaning. The object of the statute is to suppress the practice of prostitution, and to place a female in a house of prostitution means the furnishing of a place and opportunity. The subdivision of the statute under which appellant is charged does not imply the element of force, either physical or moral. . . . "

Although the trial court denied the motion to strike the Supplemental Bill of Particulars, it did grant, as heretofore stated, the motion to quash the information upon the grounds and for the reason that the Supplemental Bill of Particulars furnished disclosed that no offense was committed within the provisions of said section 43–4401.

■■ In the case of *State* v. *Benham*, 58 Ariz. 129, 118 Pac. (2d) 91, 93, in the matter of a Bill of Particulars this court has the following to say:

"The defendant takes the position it was the mandatory duty of the court to order the county attorney upon his request to furnish him a bill of particulars. From the language of section 44–712, it is obvious that it was intended a defendant should not be forced to trial without first being fully informed of 'the nature and cause of the accusation against him,' as provided in section 24, Article II of the state Constitution, and that such information should be 'of the particulars of the offense sufficiently to enable him to prepare his defense.' However, the bill of particulars is required to convey only 'such information as may be necessary for these purposes.' Sec. 44–712. The

rule does not make it imperative to furnish a bill of particulars but requires it only when it is necessary, and it would seem that the question of the necessity for the defendant to be further informed of the particulars of the offense would rest in the sound discretion of the court. If, for instance, through earlier proceedings in the case a defendant is already in possession of all the facts and particulars of the crime, it would not be necessary to furnish him a bill of particulars and a refusal by the court to order the county attorney to furnish one would not be an abuse of discretion and error. The section (44–712) authorizes the court in determining what facts, if any, should be furnished a defendant, to 'consider the whole record and the entire course of the proceedings against the defendant.'

"In all felony charges the accused must be given a preliminary trial and, if he does not waive the preliminary, the testimony in all cases, upon the request of the county attorney, must be reduced to writing or taken in shorthand and transcribed. Sec. 44–316. At such a proceeding ordinarily a defendant will be fully informed as to all the details of the crime, including the means used in committing the offense."

We hold that Marta Bach was placed in the charge and custody of the Lieutenant under the meaning of our statute when the defendant went to her room and advised her to go to the room of the officer and by seeing that she was in his room as the Bill of Particulars showed.

We further hold that when the defendant stipulated to accept the transcript of the reporter's notes in the preliminary hearing in this cause that he waived any right to object to further information as to being informed of the offense in order that he might prepare himself for trial. And, we further hold that in keeping with the case of *State* v. *Benham, supra,* the question of the necessity for the defendant to be given further information in the way of a Bill of Particulars is in the sound discretion of the court,

but in this instance the defendant was clothed with all the information necessary in either the transcript of the reporter's evidence or by the Supplemental Bill of Particulars filed.

The order of the Superior Court of Maricopa County is reversed and vacated and cause remanded for further prosecution and proceedings.

McALISTER, C. J., concurs.

ROSS, J. (dissenting).—It appears from the bill of particulars that the defendant, on the evening or night of January 22, 1943, was a bellboy at a hotel in the City of Phoenix, and that Marta Bach was a guest of such hotel occupying room 218; that in response to her request for "a couple of dates" defendant arranged a meeting between her and a United States Army Lieutenant, who was also a guest at such hotel in room 220, and who also had asked the defendant "to furnish him with a woman"; that, under the arrangement, Marta Bach visited the lieutenant's room, for which the latter paid her $35 in money, a portion or all of which was obtained by having the defendant cash the lieutenant's check.

The statute which it is claimed the defendant violated, Section 43-4401, makes several acts pandering as (1) placing a female in the charge and custody of any other person for immoral purposes; (2) placing a female in a house of prostitution with the intent that she shall lead a life of prostitution; (3) compelling any female to reside with him, or with any other person, for immoral purposes or for prostitution; or, (4) compelling a female to lead a life of prostitution.

When the county attorney furnished the bill of particulars under Sections 44-712 and 44-713 the defendant moved that the information be quashed upon the ground that the particulars set out did not con-

stitute the offense charged in the information, which motion was granted.

From such order the county attorney, on behalf of the state, has appealed. The state insists the information states an offense and I agree that it does, but does the bill of particulars offered in support thereof state facts constituting the offense alleged in the information. The statement in the majority opinion of the facts is correct except the last sentence which is a conclusion of the county attorney from the facts and is clearly erroneous.

If the facts shown by the bill of particulars do not constitute the offense alleged, it was the duty of the court, under section 44-1005 (1) (e), to quash it. What do the facts show? I have already stated what the defendant did in facilitating their getting together. The question is, do the facts thus stated show that the defendant "placed" Marta Bach "in the charge or custody" of the army officer. In *People* v. *Drake,* 162 Cal. 248, 121 Pac. 1006, a question similar to the one we have here was before the court. The court there said:

"By this definition, in order to constitute the offense, it is made imperative that the female in question shall have been 'placed in custody' by the person charged. The use of the words 'in custody' necessarily implies that she must be placed where she is detained or kept in the charge or control of another, in some sort of restraint so that she is not free to come and go or otherwise act as she pleases. . . . "

As used in the California statute, Pen. Code § 266d, "placed in custody" was construed to mean a placing in such manner or fashion that the subject thereof was restrained or detained and was not free to go or remain as she (the female) pleased.

I think "in charge of" and "in custody of," as used in our statute, mean the same thing and that

there must have been exercised over the woman some restraint or detaining influence.

In *People* v. *Draper,* 169 App. Div. 479, 154 N. Y. Supp. 1034, 1040, the court, in discussing a New York statute (Penal Law § 2460, subd. 2) reading, "Any person who shall place any female in the charge or custody of any other person for immoral purposes," said, among other things:

"It is when the conduct takes on a permanent character, when the active party dominates and dedicates the life of a woman to immorality, that the law imposes the severe penalty of 'imprisonment' " etc.

See also *People* v. *Odierno,* 166 Misc. 108, 2 N. Y. Supp. (2d) 99.

These cases are the only ones that I have been able to find that have passed upon the meaning of the phrase "in the charge or custody of," and they all hold there must be some restraint or control of the female to constitute the offense.

It would be interesting if the majority opinion would point out what power or control the bellboy had over Marta Bach or the officer. He was a mere messenger boy, doing what they asked him to do. He exercised no restraint or influence, so far as the record shows, over the woman. He in no way influenced her desires or conduct. He conveyed to each of them the wishes of the other and, when requested by the officer to cash his check, did so. If he received from them, or either of them, as much as a tip it is not shown.

The majority opinion holds that the evidence shows defendant "placed Marta Bach in the charge or custody of the officer" for immoral purposes. This is a strange perversion of the facts as well as the language of the statute. Marta Bach was, according to the evidence, a free agent. She was the person who did the placing, uninfluenced by any consideration

moving from the defendant. If the evidence showed that the defendant's conduct or actions brought him within the terms and meaning of Section 43–4401 I would not hesitate to join in the majority opinion, but I think that opinion is making the law rather than interpreting it.

I must confess I do not know what the majority mean when they say defendant "waived any right to object to further information." All that defendant asked for was the bill of particulars and when it was furnished he raised the point that he was not therein shown to be guilty of any offense.

I think the judgment of the lower court should be affirmed.