Tayior, Chief Justice,
 

 dissentiente.
 
 — An escape is defined to be a violent, or privy evasion, out of some lawful restraint; as where a person is arrested or imprisoned, and gets away before delivered by course of law.
 
 (Stan/. P. C. C.
 
 26.) The facts of this case do not bring it within this description of the offence; and if they amount to an escape, an alternative should be added to the definition, “ or where the sheriff so indulges the prisoner that he may if he please.” The rule of law ought to be very clear, which charges the sheriff in a case of this kind. Some well established principle, or adjudged case, which leaves nothing to inference or remote analogy, might have been produced, I should think, if the law had been so understood. But, as it is still doubtful to my mind, though I have taken pains to inform myself, it seems to me safe to follow the advice of Lord Coke, given on this very subject: “And for as much as escapes are so penal to sheriffs, the judges of the law have always made such favorable construction, as the law will suffer, in favour of sheriffs; and, to the intent that every one bear his own burthen, the judges shall never adjudge one to make an escape by a strict construction.” (3
 
 Coke
 
 44.) The cases cited, for the plaintiff, do not appear to establish the position that the sheriff is liable in this case. In
 
 Boyton’s casef
 
 cited
 
 3rd Co.
 
 the main points adjudged, were, that the sheriff is not bound to bring the party arrested on a
 
 ca. sa.
 
 in a right line from the place whei’e he was arrested, or from the county. But if he has the prisoner in court, the day of return, (having been out of his cus
 
 *219
 
 tody in the mean season,) it is good; but if a sheriff assent that one who is in execution, and under his custody, go out of the jail, for a time, and then to return, although he return at the time, it is an escape. And so it is if the sheriff suffer Mm to go with a bailiff or keeper; for the sheriff ought to have him in close custody. These are cases of an actual going out of the jail, and certainly amount to an escape. But, in the same case, there is a quotation from
 
 Dyer,'
 
 to show that
 
 “
 
 those who are in execution shall not go at liberty, within the prison nor out of the prison, with their keepers; but shall be kept in strict ward.” This appears in
 
 Dyer
 
 249
 
 b.
 
 to be an order of the Star Chamber, made in 24
 
 Hen.
 
 8. A court which, Lord
 
 Clarendon
 
 observed, held for ho-nourable, that which pleased, and for just, that which profited. But, admitting the authority to be good, its utmost extent is, to prevent the prisoner from going out of his apartment; and not to restain him from such indulgence as may be had within his room. So it is stated in
 
 Dalton, C.
 
 159. that to suffer a prisoner to have greater liberty than the law allows, is an escape. And this is sometimes quoted without the example by which he explains his meaning, viz. That if a jailor, or other officer, shall license a prisoner to go abroad for a time, and to come again, this is an escape, though he return again.
 
 Ibid.
 
 In the case of
 
 Wilkinson
 
 v.
 
 Salter and Ferry,
 
 cited from
 
 Cases temp. Hard.
 
 310. the evidence of the escape was, that the prisoner had been seen at large out of the prison; that the plaintiff’s attorney asked the jailor if he was in custody, who told him, he was gone out of the prison on an errand for the prisoners, and that the jailor had made him turnkey of the prison, so that he had the key in his custody, and let people in and out of the jail. The court must be understood according to the subject-matter of the case; and, in reference to these facts, when it pronounces the escape to be voluntary, « for, as he has been entrusted with the keys of the prison, he may go
 
 *220
 
 out when he will.” In the case cited from 5
 
 Mass. Rep.
 
 31°* s^ier® was guilty of an escape, because he was not at the jail to receive the prisoner, neither had pe ally deputy there. Besides, the jailor, who was the party arrested, was not put into tlie jail, but remained in the jail house, viz. the residence of the jailor. The only jail keeper, therefore, was the party arrested; and he could not secure and confine himself. But in this case, the sheriff continued to be jailor, and was actually present, to fulfil any duty required of him. What is said, in the case last cited, that if the sheriff make a jail keeper of the prisoner, and give him the keys, it is the escape of thes heriff, I must think, that the Court spoke with a view to the action in
 
 Wilkinson
 
 v.
 
 Salter and Perry.
 
 But, in that case, there was an actual going out of the jail. There is a plain difference between there being no jail, and a jailor who does'not exercise all the power that the law gives him. I cannot, therefore, consider those cases as applicable, which show that no one can be lawfully imprisoned, without a keeper; as Avhen a woman, who was Avarden of the fleet, married one of the prisoners, he was adjudged to be at large; so if the office of warden of the fleet descend upon a prisoner, the laAV will adjudge him to be out of prison, because he cannot be his own prisoner. It seems to me a prisoner continues within the legal custody of the jailor, while he remains within the prison, and there is an existing jailor. The opposite construction would amount to this: that the physical poAver of escaping shall be equivalent to an actual escape. And if the jail be insufficient, the sheriff may not take the risk upon himself, but shall fetter the prisoner, or summon a guard. That, although the usual restraint has been found ineffectual to keep the prisoner in jail, yet the sheriff shall pay the debt, because there was a possibility of escaping. In what respect does it differ from the case where a feeble sheriff arrest a strong man upon a writ, who goes quietly to jail without external
 
 *221
 
 force; yet as he might have escaped by a single effort, the sheriff shall be considered as having suffered an escape. Admitting that upon general principles, the design of imprisonment is to enforce a man to pay his debts; yet it does not seem that the law requires any thing more than confinement of the person under legal custody. In the case cited from 1
 
 Bos. and Pull.
 
 24. it was held, that if a sheriff, or other officer, having taken a prisoner in execution, permit him to go about with a follower of his, before he takes him to prison, it is an escape; because the follower could have no power to detain the prisoner, if he had chosen to escape; and the warrant would have been no justification to him, if any mischief had happened. But I cannot doubt, that the sheriff might have interfered in this case, to prevent an actual escape, if the attempt had been made, any more than I can doubt that a sheriff, who is conducting a prisoner to jail, may exert himself to prevent an escape, although he is walking with him, without any restraint on his person. The law, introducing executions against persons for debt, was passed nearly six centuries ago, and provides “that they shall be imprisoned in iron, under safe custody.”
 
 Stat. West.
 
 2. In construing this law, it is allowable to take into view the different genius of our institutions and age, the. language of the legislature whilst that law was in force, and the alterations of policy which have recently taken place. And although it may not be practically true, in the extent laid down by a great moralist, “that, as names make laws, manners, likewise, repeal them.” Yet the consideration of these things will sometimes aid in the interpretation of them, “ and give them a meaning, not according to the letter that kills, but according to the spirit that giveth life.” It is accordingly provided, that the apartments of . a jail shall be comfortable; that prisoners shall not be treated with wanton, or unnecessary rigor; and that they may be allowed to procure such additional comforts as
 
 *222
 
 their circumstances allow. 1795,
 
 ch. 433.
 
 The question whether there has been an escape or not, is of easy solution, where it depends upon the fact, whether the prisoner remained in, or went out of prison; but to make it depend upon the degree of indulgence, which is shown to him while he actually remains in prison, is to render the application of the law difficult and uncertain.