Peaeson, J.
 

 The plaintiff examined several witnesses, who swear, that “ on many occasions, during the period of John M. Currie’s imprisonment, they found company with him in jail, the door being open, and the jailor not present.” “ On
 
 *105
 
 several occasions they found said Currie alone in jail, the door being closed, but not locked : on some occasions, when they called to see Currie in the jail, they found him there alone, the door of his room being open, so that nothing prevented his escape, if he desired to leave the jail.” Two or three witnesses swear, that they were
 
 under
 
 an impression that they saw said Currie step from his room into the jailor’s room, and then back into his own room, the jailor not being present.”
 

 IBs Honor instructed the jury, “if they believe the witnesses, the plaintiff was entitled to recover.” To this the defendant excepts.
 

 We think there is error.
 

 The evidence was fit to go to the jury, upon the allegation that Currie had been permitted to go out of the debtor’s room ; but his Honor took the question from the jury, and held that the facts proven by the witnesses, constituted in law, an “ escape.” The impression of two or three witnesses, that they saw Currie step from his room into the jailor’s room and then back into his own room, is not a fact that can be dealt with by a Court; so we are to take it that his Honor was of the opinion, that if a debtor is allowed to see company in the debtor’s room, the door being open and the jailor not present, or to be in the room alone with the door closed, but not locked, or to have the door of the room left open, so that nothing prevented his escape, if ho desired to leave the jail, is, in htw, an escape, although the debtor does not in fact leave, or go out of the debtor’s room.
 

 The Act of 1795, requires that the jails of the several counties shall have an apartment for the confinement of debtors. A debtor who is not allowed to go out of this apartment, and to take the benefit of prison bounds, is said to be in “ close prison.”
 

 The Statute, .13 Ed. 1 ch. 1, Rev. Statute ch. 109, sec. 20, gives the creditor an action of debt against a sheriff -who shall wilfully or negligently suffer a debtor to escape. Our question is, what amounts to an escape, in‘the meaning of this Statute ?
 

 
 *106
 
 The acceptation of the term is,
 
 “
 
 to get away from, to go out of, a place of confinementand in the declaration under this statute the allegation is, “ and the said defendant, on &c., at, &c., suffered and permitted the said E. E., to escape and go at large ; and the said E. E. did then and there escape and go at large, wheresoever he would, out of the custody of the said defendant.” See form, 2 vol. Chi tty on plead. 418 ; another form, 420, and another, 422. See a like form,
 
 Jones
 
 v.
 
 Pope,
 
 1 Saunders’ Reports, 35.
 

 Ilow it can be said that a debtor “ did escape and go at large,” when, in point of fact, he never went out of the room in which it was the duty of the sheriff to keep him, is beyond the reach of our comprehension.
 
 We
 
 know of no rule in the construction of a statute, which subjects the sheriff to the payment “ of all such sums of money as are mentioned in the said execution and damages for detaining the same,” as a
 
 penalty for suffering a debtor to
 
 escape, by which we are at liberty to hold, that an
 
 opportunity
 
 to go out of the debtor’s room, is the same, in legal effect, as if the
 
 debtor
 
 had,
 
 in
 
 fact,
 
 gone out of the room.
 

 We admit that if a debtor be permitted to walk-in the passage of the jail, although it is secured by two outer doors, both of which are locked ; or if he be permitted to»walk out in the yard, not having taken the benefit of the prison bounds, although he is accompanied by t-lie jailor and a strong guard, it is an escape : because he has to be kept in close prison, and has been snffered to go out of the room in which it was the duty of the sheriff to keep him». But if he remains in the room, and does not go out of'the limits in which it is the duty of the sheriff to keep him, we are not able to perceive how there can be an escape» Suppose one of two debtors break open the door or window and makes his escape, leaving the room open
 
 ;■
 
 but the other debtor remains there. Can it be said that the latter'made his escape? Suppose a jailor, in admitting the- friends of a debtor to visit him, leaves the door open longer than is necessary, and does not instantly
 
 “
 
 turn his key ” after every ingress and egress; or suppose
 
 *107
 
 be should leave the door ajar, while he goes- to fetch a chair for the visitor to sit on, but the debtor- does not leave the room : do these acts amount to- an escape ? If this doctrine of
 
 constructive
 
 escape be admitted, it Mali include all of these varieties. Whether there has been an escape or not, is a question of easy solution when it depends upon the fact whether the debtor has remained in or gone out of the room ; but to make it depend upon the degree of indulgence which is shown to him, while he actually remains in-prison, is to render the application of the law difficult and' uncertain. The rights of the creditor are not violated’,, unless the debtor goes beyond the limits assigned by law. 0ur attention was called, in the argument, to
 
 Wilkes
 
 v. Slaughter, 3 Hawks, 211. We have no doubt that was the authority upon which his Honor felt bound to decide .this case. Judges Hall and HeNDBesoN, who make the decision i'n opposition to the opinion of Taylob, C. J., lay peculiar- stress upon the fact, that the jailor had given the debtor
 
 the key
 
 of'his. room, so-as
 
 to make the debtor his own keeper-.
 
 Possibly thife- might furnish some ground for distinguishing that from the case now under consideration. The distinction is. not substantial enough to be made the ground of a- practical difference. For this reason-, we prefer to put our decision on the ground, that we do not concur with the two judges who decided that case, and do not admit the correctness of the doctrine of
 
 “
 
 constructive escapes ” as at all applicable to the statute under which the present action is brought. Besides the fact that the authority of that case is weakened by the dissenting opinion of the Chief Justice, the decision is inconsistent with every precedent of a declaration under- the statute of Ed. 1st., to be met with in the books. They- all contain- an express allegation that the debtor did escape and go at large.” (See precedents cited above.) In all the precedents of pleas of “ fresh pursuit and recaption,” it is assumed that the debtor had gone out of the jail. We are told by Lord Coke,
 
 “
 
 one of the best arguments, or proofs, in law, is drawn from the right entries in course of pleading-j for the lavW itself speaketh by good' pleading;
 
 *108
 
 therefore, Littleton here sayeth, ‘ it is proved by pleading,’ &c., as if pleading were
 
 ipsius legis viva
 
 voxCoke Lit. 115b. Wo think “it is proved by pleading”’ that no constructive escape can make a sheriff liable to the penalty imposed by the Act, Ed. 1st.
 

 Upon an examination of the cases relied on by judges Hall and ILeNdebsoN, we find there is not any one case cited in ■which the debtor had not
 
 im, fact
 
 “left the jail and gone at large and we are satisfied that the two very learned judges were misled by the '“cunning and curious learning” which they met with in Plowden, applicable to the state of the ancient lawr, when sheriffs had the appointment of their own jails ; but having no application whatever to the present state of the law, where -each county has a '.common jail, with an apartment'(or room) for debtors, in which it is made the duty of the sheriff to see that they .remain, unless they giye bond for the benefit of the prison bounds.
 

 Plowden puts two cases: •“ -If a woman be jailor, and one imprisoned in the jail marry her, it is an escape in the woman.” “If the warden of the fleet, who hath his office in fee, die seized, his son and heir being there imprisoned, and the office descend to him,-being .imprisoned, the law will adjudge liini to be out of prison,
 
 although
 
 he has fetters upon him; because he cannot be his own prisoner.”
 

 We
 
 imagine Plowden would have added another to his list of queries, had he been called upon to frame a declaration in debt for an escape under our statute, against the executor or administrator of a sheriff, seized of the office in fee, whose heir apparent happened, at the time of his death, to be confined in the debtor’s room, and was discharged by act of law, to wit: the
 
 descent cast,'“
 
 although the fetters were kept upon him.”
 

 But this learning evidently has '-no application to the doctrine of escape under our statute, as is fully shown by Chief Justice Parsons;
 
 Barttlet v. Willis,
 
 3 Massachusetts Reports, 102. The case before him was that of a debtor, who had, in ¡the
 
 night
 
 time, contrary to the condition of his bond not to go
 
 *109
 
 out of the jail yard in the night time, gone a few steps outside ©f the yai’d to get a pitcher of water, the pump inside of the yard being frozen up: and he takes occasion to show how the law stood when sheriffs had the appointment of their own jails : how it was afterwards in regard to the Marshalsea and Eleet prison, when the debtors could be allowed by the jailor, the privilege of “ the rules,” by giving bond; and how' the law now is, in his own State, under a statute similar to ours, in regard to
 
 “
 
 prison bounds,” where debtors are allowed by law the privilege of
 
 “
 
 the bounds;”
 

 The general remarks in regard to- the state of the law when sheriffs had the appointment of their own jails, is relied on in
 
 Wilkes
 
 v.
 
 Slaughter,
 
 and no reference is made to the point before the Court for its decision.
 

 Venire de now.
 

 Pee CueiAM..