STATE v. GARRETT JOHNSON.

*Convicts—Escape—Neglegence—Penitentiary.*

1. A person employed as a guard, in the management of convicts, is criminally responsible for the escape of prisoners confided to his care.

2. Officers and public agents will not be held to the rigorous common-law rule of responsibility for the custody of convicts employed in labors outside of the Penitentiary, *actual* negligence being the test of guilt.

3. As a general rule, it is not necessary to prove negligence when one has lawful custody of prisoners, for it is implied, unless occasioned by the act of God, or from irresistible adverse force.

(*Rainey* v. *Dunning*, 2 Murph., 386, cited and approved).

This was an INDICTMENT for an escape, tried before *Clark, Judge,* at January Criminal Term, 1886, of WAKE Superior Court.

The defendant, having the custody and control of a convict committed to the penitentiary for a felony, is charged in the indictment, with having unlawfully and negligently permitting him to escape and go at large. On a plea of not guilty, he was tried before a jury, who rendered a special verdict, in which they find as follows :

I. That one Peter Birdsong, a colored boy of the age of twelve or fourteen years, was sentenced by the Superior Court of Warren county, at September Term, 1883, to the State's prison, for a term of three years, for larceny.

II. That the said Birdsong was a delicate boy, and in feeble health, and his behavior in the Penitentiary was good, and for this reason he was allowed, by and under the authority of the the Directors and Wardens of the Penitentiary, privileges of a "trusty."

III. That a "trusty" is a convict, who, for reasons sufficient in the judgment of those in authority over the Penitentiary, when at work on railroads or farms worked by convicts, or when on other work outside of the Penitentiary grounds, is not required to be under the eye of the overseers or guards at all times, but is permitted to go on errands, or other special service in the furtherance of the work in which he and the other convicts are engaged, away from the presence of such overseer and guards.

IV. That the regulations under which this is done by the authorities of the Penitentiary, was made in the interest of economy, to save the expense of additional guards and overseers.

V. That at the time of the alleged escape of said Birdsong, the defendant was an overseer and guard, in charge of some of the convicts, engaged in work on a farm in Wake county, cultivated by convicts, and Birdsong was sent to him with other convicts, as a "trusty" as aforesaid.

VI. That he was sent without a guard, by the defendant, after a lot of bags which were necessary for use in picking cotton, and while on the errand, absented himself and did not return; and defendant was the only guard in charge of a squad of thirteen convicts, and the said bags were several hundred yards away from the place where the convicts were at work.

VII. That the "trusties," while authorized by the Directors, were not designated by them, and in this case, Birdsong was made a "trusty" by the Warden of the Penitentiary.

If upon these facts, the Court is of opinion that the defendant is guilty, the jury find him guilty; if otherwise, they find him not guilty.

The Court being of opinion that the facts founds by the jury do constitute the offence charged in the indictment, directed an entry to this effect and pronounced judgment, from which the defendant appealed.

*Attorney General,* for the State.
*Mr. R. H. Battle,* for the defendant.

SMITH, C. J. (after stating the case). An escape has been effected, in the criminal sense of the law, in the language of an eminent author in a work on criminal law, " when one who is arrested, gains his liberty before he is delivered in due course of law." 1 Russell on Crimes, 467.

It is defined in brief words by another writer, as " the departure of a prisonerer from custody." 2 Whar. Cr. Law, §2606.

It is not necessary to prove negligence in one who has the lawful custody of the prisoner, for it is implied, and is excusable only, when " occasioned by the act of God, or from irresistable adverse force," or, in the language of this Court, when it results "from the act of God or the public enemy." *Rainey* v. *Dumming,* 2 Murph., 386. This rigorous rule of the ancient common law, must, we think, find some relaxation in its application to those officers and agents, in whose custody, convicts sentenced to the State's prison, are placed when sent out from its walls to do public work, and when greater freedom in their movements is unavoidable, and increased facilities for making an escape are offered. In such case, to make such custodian criminally answerable, the means at his disposal to secure prisoners, and the service to which they are put, must be considered, in determining whether there has been actual negligence, or a failure to use the powers conferred, in preventing an escape. The defendant in the present case, had a squad of thirteen in charge, whose field labor he

was to supervise, see that the convicts worked—and that they did not get away from any inattention of his. Their safe keeping was necessarily thus rendered more difficult, and the measure of official responsibility should be correspondingly reduced. The policy of our penal system, looks to the labor of its convicts, not only within the prison walls, but outside, on public works and in the service of the State, as alike securing their health, and diminishing the costs of their support, by making their own labor contribute to it. These considerations require a modification of the common law, and when an offence, such as is here charged against the defendant, is imputed to him as an overseer or guard, the guilt should be determined by an inquiry into the existence of actual negligence and inattention to duty, on the part of the accused.

Here the escape was caused by the direct act of the defendant, not only indicating a want of care, but in affording the convict an opportunity to escape. He was sent alone after bags for the picked cotton, to a place several hundred yards distant, and never returned. It was not alone a case of misplaced confidence in a "*trusty*," but the errand enabled him to make his departure, and finds no extenuation in the fact that the bags were needed in prosecuting the farm work.

If such management of convicts employed in out-door work were tolerated in those who have them in keeping, their imprisonment and punishment would be rendered very precarious, and escapes frequent and unavoidable. They should at such times, remain in view and under control of the guard, so that any insubordination might be readily repressed, and any attempt at escape frustrated at once, or at least such means as were at hand, could be used for that purpose.

No objection is made to the form of the indictment, nor do we discover any.

There is no error, and the Court below will proceed to judgment. Let this be certified.

No error.                                                   Affirmed.