VANCE BRADY v. J. R. HUGHES, Sheriff.

(Filed 20 April, 1921.)

**1. Sheriffs—Personal Execution—Penal Statutes—Strict Construction.**

The provisions of C. S., 3943, making the sheriff liable for the escape of one taken under personal execution upon a judgment for the payment of a debt, interest, and cost, are highly penal, requiring a strict construction or, at least, one reasonable in determining the sheriff's liability in any given case.

**2. Same—Escape—Absence of Deputy Sheriff.**

The fact that the sheriff's deputy permitted his prisoner to remain in an attorney's office, with door unlocked, while he, the deputy, was away for a few minutes, and that he returned, found the prisoner there, and delivered him to the jailer, as the statute, C. S., 3943, required, is not such an "escape" as will make the sheriff liable for the debt, etc.

**3. Same—No Damage Shown.**

The fact that the sheriff's deputy permitted his prisoner, arrested for debt under an execution against the person, to remain a few minutes in a room with the prisoner's attorney, from which the deputy sheriff was absent for a part of the time attending to matters connected with the case, and then, soon returning, delivered the prisoner to the jailer as the statute directs, C. S., 3943, where the prisoner remained until discharged in due course of the law, does not show any loss to the plaintiff, and is not such an "escape" as is contemplated by the statute.

APPEAL by plaintiff from *Ray, J.*, at November Term, 1920, of GUILFORD.

Plaintiff's cause of action, briefly stated, is that defendant, Sheriff of Randolph County, through one of his deputies, arrested one Robert Needham, under an execution against the person regularly issued from the Superior Court of Guilford County to Randolph County, in an action entitled "Vance Brady v. Robert Needham"; that after making the arrest the sheriff, by his deputy, brought the defendant in execution to Greensboro, and upon his arrival took him to the office of his (Needham's) counsel, where he (the deputy) left him for a few minutes in charge of his said counsel so that he could attend to another matter connected with the case. The deputy sheriff returned to the office, where his prisoner remained during his absence, and took him to the jail and delivered him to the sheriff of Guilford County, according to the mandate of the writ, who confined him in prison until he was duly discharged by law.

Defendant demurred. The court sustained the demurrer, and plaintiff appealed.

*W. P. Bynum, R. C. Strudwick* for plaintiff.
*Brooks, Hines & Kelly* for defendant.

WALKER, J. It appears, in this case, that the prisoner was not permitted, voluntarily or negligently, to go at large, nor in fact did he go at large. He had the opportunity, perhaps, to do so, but the mere chance to do so will not constitute an escape within the meaning of our statute (Rev., 2823; C. S., 3943), making the sheriff liable for the debt, interest, and costs. The statute is highly penal, which would require it to receive a strict construction or, at least, the construction of it should be a reasonable one in determining liability in any given case.

There was no actual escape by the defendant. He did nothing himself, but at all times continued obedient to the direction and control of the deputy sheriff, who had him in custody. An escape is said by this Court to take place "When one under arrest gains his liberty before he is delivered in due course of law or the departure of a prisoner from custody." S. v. Ritchie, 107 N. C., 857, opinion by the present Chief Justice. These definitions, as there said, were approved by Chief Justice Smith in S. v. Johnson, 94 N. C., 924. If we test the question now being considered by either one of these definitions, there was in law no escape by the defendant, and none imputable to the officer in whose custody he was at the time. The defendant was not left in charge of the attorneys in their office at his own request, nor was any favor or liberty intended to be granted to him, but what was done by the officer was something incident to the execution of the process and in the line of his duty. The defendant remained in custody, and under restraint, and it may be fairly inferred from the admitted facts that the restraint was really more effectual than it was when he was in the actual custody of the officer. The latter was absent only a few moments, and the defendant, during this very brief interval, acknowledged the control and authority of the deputy sheriff, and never once attempted to evade it or even to question it, if he ever, for a single moment, contemplated flight. Everything was fully accomplished as the law intended, and with the full consent and submission of the defendant to the law. He was taken to the jail of Guilford County, according to the mandate of the writ, and there delivered into the custody of the sheriff, who imprisoned him until he was discharged in due course of law. How has plaintiff lost a penny, or how was he in jeopardy of losing one? The execution and statute required the officer "to arrest the debtor, and commit him to the jail of the (proper) county until he shall pay the judgment or be discharged according to law." This has been done in exact conformity to the statute, and without the least prejudice to the rights of the plaintiff. We cannot believe that the law is so rigorous as to require that we should adopt the view taken of the case by the plaintiff.

BRADY *v.* HUGHES.

But we find high authority for the support of our position in *Currie v. Worthy,* 47 N. C., 104. That was a case where a defendant was confined in "the debtor's room" of the jail, and was left by the jailer with the doors of the room and jail open, so that nothing prevented his escape. The court made several comments upon the evidence, which we will not quote literally, but reproduce substantially and without regard to the text, as some reference to them is necessary to a full and proper understanding of the decision. The Court said that the impression of two or three witnesses that they saw Currie step from his room into the jailer's room and then back into his own room is not a fact that can be dealt with by a court; it is to be taken, therefore, that his Honor was of the opinion that if a debtor is allowed to see company in the debtor's room, the door being open and the jailer not present, or to be in the room alone with the door closed but not locked, or to have the door of the room left open, so that nothing prevented the debtor's escape if he desired to leave the jail, is, in law, an escape, although the debtor does not in fact leave or go out of the debtor's room. *Chief Justice Pearson* then refers to the Statute of 13 Edw. 1, ch. 1, it being like our act (Revisal of 1905, sec. 2823; C. S., sec. 3943), and says the act of 1795 requires that the jails of the several counties shall have an apartment for the confinement of debtors. A debtor who is not allowed to go out of this apartment, and to take the benefit of prison bounds, is said to be a "close prisoner." The statute, 13 Edw. 1, ch. 1, Revised Statute, ch. 109, sec. 20, gives the creditor an action of debt against a sheriff who shall willfully and negligently suffer a debtor to escape. Our question is, what amounts to an escape in the meaning of this statute? The acceptation of the term is, "to get away from, to go out of, a place of confinement"; and in the declaration under this statute the allegation is, "and the said defendant, on, etc., at, etc., suffered and permitted the said E. F. to escape and go at large; and the said E. F. did then and there escape and go at large, wheresoever he would, out of the custody of the said defendant." See form, 2 vol., Chitty on Plead., 418; another form, 420, and another, 422. See a like form, *Jones v. Pope,* 1 Saunders' Reports, 35. In this connection he says that the attention of the Court was called to *Wilkes v. Slaughter,* 10 N. C., 211, as the authority upon which the erroneous ruling of the Superior Court in *Currie v. Worthy* was based. He criticizes that case and virtually overrules it, and adopts the view of the dissenting Judge. In doing so he says: "The Court lays peculiar stress upon the fact that the jailer had given the debtor the key to his room, so as to make the debtor his own keeper. Possibly this might furnish some ground for distinguishing that from the case now under consideration. The distinction is not substantial enough to be made the ground of a practical

difference. For this reason we prefer to put our decision on the ground that we do not concur with the two judges who decided that case, and do not admit the correctness of the doctrine of 'constructive escapes' as at all applicable to the statute under which the present action is brought. Besides, the fact that the authority of that case is weakened by the dissenting opinion of the Chief Justice, the decision is inconsistent with every precedent of a declaration under the Statute of Edw., 1st, to be met with the books. They all contain an express allegation that the 'debtor did escape and go at large.' (See precedents cited above.) In all the precedents of pleas of 'fresh pursuit and recaption,' it is assumed that the debtor had gone out of the jail. We are told by *Lord Coke,* 'one of the best arguments or proofs, in law, is drawn from the right entries in course of pleading; for the law itself speaketh by good pleading'; therefore, *Littleton* here sayeth, 'it is proved by pleading,' etc., as if pleading were *ipsius legis viva vox.* Coke Lit., 115b. We think it is proved by pleading that no constructive escape can make a sheriff liable to the penalty imposed by the act of Edw. 1st. Upon an examination of the cases relied on by the Court in that case, we find there is not any one case cited in which the debtor had not in fact 'left the jail and gone at large'; and we are satisfied that the two very learned judges were misled by the 'cunning and curious learning' which they met with in Plowden, applicable to the state of the ancient law." The Court then considers the question more nearly analogous to the one upon which this case must turn, and says: "How it can be said that a debtor 'did escape and go at large' when, in point of fact, he never went out of the room in which it was the duty of the sheriff to keep him, is beyond the reach of our comprehension. We know of no rule in the construction of a statute which subjects the sheriff to the payment 'of all such sums of money as are mentioned in the said execution and damages for detaining the same' as a penalty for suffering a debtor to escape, by which we are at liberty to hold that an opportunity to go out of the debtor's room is the same, in legal effect, as if the debtor had, in fact, gone out of the room."

It will be seen that the Court, in that case, emphasized the fact that the prisoner was not permitted "to go at large," either willfully, voluntarily, or negligently, nor given perfect freedom of action, and that he did not actually escape, though given full and free opportunity to do so. The former statute required that the debtor should be kept in the prison, *and in close confinement,* while the present statute has no such provision, but requires only that he be committed to the jail of the county until he shall pay the judgment or be lawfully discharged. Rev., 627. Under the former statute requiring "close confinement," this Court held that leaving the debtor in his room, with the doors of

the prison open to him during the absence of the jailer, was not an escape on the part of the latter. In this case the debtor was under surveillance and restraint all the time until he was delivered to the Sheriff of Guilford County, and was not at any time permitted "to go at large," nor did he attempt to do so. We cannot, therefore, believe that a case such as this one was within the intention of the Legislature, or within the meaning of the statute.

If we should concede that the facts show a negligent escape, the debtor was immediately retaken and imprisoned, as plaintiff's counsel admitted could be done, when the escape was merely negligent, and that it could be pleaded in bar of a suit for the penalty. It surely cannot be characterized as a voluntary or willful escape. No one can complain of a second arrest or recapture but the party himself. *Ames v. Webber,* 8 Wendell, 545.

It is best always for sheriffs and other such officers to follow strictly the mandates of their writs, but here, if there was any departure, it was formal and not substantial, and not the least prejudice to the plaintiff resulted from it, but he got everything to which the law entitled him. It would be a reproach to the law if, upon so slight a ground, if any ground at all, we should hold the defendant to the payment of so heavy a penalty.

Even the most technical refinement would fail to bring the case within the language of our statute.

No error.