**292 P.2d 1075**

**STATE of Arizona, Appellee,**

**v.**

**Cornell JACKSON, Appellant.**

**No. 1079.**

Supreme Court of Arizona.

Feb. 7, 1956.

Richard J. Dowdall, Tucson, for appellant.

Robert Morrison, Atty. Gen., and James H. Green, Jr., Sp. Asst. Atty. Gen., for appellee.

LA PRADE, Chief Justice.

This is an appeal from a judgment finding the defendant guilty of pandering as defined by Section 43–4401, A.C.A.1939, as amended, now Section 13–591, A.R.S. 1956.

Briefly the testimony is as follows: William Anderson, a member of the Tucson Police Department, was assigned to a plainclothes detail on the evening of February 9, 1955. While standing at a bar in that city he was approached by the defendant, and after some innocuous conversation was asked in substance if he would like to have sexual relations with a woman. Anderson replied in the affirmative, so both

men entered Anderson's car and drove a few blocks, whereupon defendant got out and knocked on a door. Receiving no answer they decided to return to the tavern. As they approached it defendant pointed out a woman on the sidewalk, presumably the one he had been seeking. The two men got out of the car and after a very informal introduction the woman, Stella Russell, was asked by the defendant, in substance, if *she wanted* to have sexual intercourse with this man. Her unembellished reply was in the affirmative, whereupon *she* then *led* Anderson around behind the tavern to an apartment which they entered. Upon Stella's request for six dollars Anderson handed her the money and placed her under arrest. Immediately thereafter, Anderson arrested the defendant.

At the close of the State's case defendant moved for a directed verdict, contending that the evidence did not show that he was guilty of any violation of Section 43–4401, supra. This section reads as follows:

"Pandering.—Any person who shall place any female in the charge or custody of any other person for immoral purposes, * * * is guilty of pandering and shall be punished by a fine of not less than one thousand dollars ($1,000) and by imprisonment for not less than one (1) nor more than ten (10) years."

The heart of this section lies in the meaning of the terms "place * * * in the charge or custody of". At the very outset defendant is confronted with the holding in State v. Hart, 1944, 61 Ariz. 191, 146 P.2d 211, wherein this very clause was construed. A divided court (2–1) held, reversing the lower court, that "place", as used in the statute, does not imply the element of force or restraint, either physical or moral. The majority seems to have based its decision largely on the holding in State v. Hanes, 1915, 84 Wash. 601, 147 P. 193, where the Washington court had been called upon to construe the following pandering statute, Rem. & Bal.Code, § 2440:

"'Every person who shall place a female * * * in a house of prostitution with intent that she shall live a life of prostitution * * * shall be punished * * *.'"

The defendant in the Hanes case argued that the word "place" meant more than a mere invitation to remain at a place; that a restraint of some sort was implied. The Washington court disagreed with this contention, holding that the statute "does not imply the element of force, either physical or moral."

In a vigorous dissent to the majority opinion in the Hart case [61 Ariz. 191, 146 P.2d 215] Ross, J., argued that the words "'place any female in the charge or custody of any other person'" meant that the woman had to be placed where she was subjected in some manner to the control of another; that some sort of restraint upon her actions had to be imposed. Justice Ross quoted

from the opinion in People v. Drake, 1912, 162 Cal. 248, 121 P. 1006, wherein the Supreme Court of California was called upon to interpret the meaning of the following statute:

" 'Every person who receives any money or other valuable thing for or on account of his placing in custody any female for the purpose of causing her to cohabit with any male to whom she is not married, is guilty of a felony.' " Pen.Code, § 266d.

The California court held that the words " 'placing in custody' " were an essential element of the crime, stating:

" * * * The use of the words 'in custody' necessarily implies that she must be placed where she is detained or kept in the charge or control of another, in some sort of restraint so that she is not free to come and go or otherwise act as she pleases. * * * "

Justice Ross stated that he believed the phrases "in charge of" and "in custody of", as used in the Arizona statute, meant the same thing as they did in the California statute, i. e., "there must have been exercised over the woman some restraint or detaining influence." Merely acting as a "messenger boy" for a prostitute who was a "free agent" and under no compulsion was not sufficient in Justice Ross' opinion to constitute a violation of the statute.

Since the Hart decision was handed down, the Supreme Court of Washington has overruled the Hanes opinion, supra, in State v. Basden, 1948, 31 Wash.2d 63, 196 P.2d 308. The Washington court found the Hanes opinion to be inconsistent with an earlier Washington case dealing with the same statute, State v. Stone, 1912, 66 Wash. 625, 120 P. 76, 78, and apparently adopted the Stone rationale to the effect that while the words "place a female in the charge or custody of another person for immoral purposes", Rem.Rev.Stat. § 2440, did not require proof of actual physical restraint, some type of conduct showing an influence over the woman was necessary. "Proof of *moral restraint or persuasion* is all that can be reasonably required."

In People v. Draper, 1915, 169 App.Div. 479, 154 N.Y.S. 1034, 1039, the court, in construing a section of the New York Penal Law reading

"Any person who shall place any female in the charge or custody of any other person for immoral purposes * * *." Penal Law, McK.Consol. Laws, c. 40, § 2460.

stated:

" * * * the whole act contemplated that there should be an element of force or consideration operating as a coercive power * * *."

According to 10 Words and Phrases, Custody, p. 718,

" 'Custody' means a keeping, guarding, care, watch, inspection, preservation, or security of a thing, and carries

with it the idea of the thing being within the immediate personal care and control of the person to whose custody it is subjected."

Again at p. 720, "The words 'charge' and 'custody' are frequently used as synonymous." It would appear basic that for one person to place another in the charge or custody of a third, the first person would have to have some control over the second. Clearly, one party cannot place a second in the custody of a third if the second party is not subject in some way to the first person's orders. "Custody" is a commonly used term in guardian-ward, parent-child and other similar situations where one party has a varying degree of control over the other person. We do not think that the legislature meant to give it a different meaning when it enacted this statute. Had the legislature intended to proscribe solicitation alone or acting merely as a go-between it could have done so. Ordinary English usage indicates a marked difference between the terms "solicit" and "place in the custody of".

We believe that the opinions in the Drake, Stone, Draper and Basden cases, supra, as well as the dissent by Justice Ross in the Hart case, all of which deal with the words "place in charge of" or "place in custody", and all of which, without exception, concluded that some type of force, restraint or persuasion was required as an essential element of the crime, are more consonant with good reason and proper statutory construction than the opinion in the Hanes case, since overruled, and the majority opinion in the Hart case. Consequently, we hereby adopt the viewpoint of Justice Ross in his dissent and expressly overrule the decision in State v. Hart, supra.

The facts of the case at bar do not show any type of restraint or persuasion, either physical or mental, exercised over Stella Russell by the defendant, nor do they indicate that Anderson was to have had any such control or custody over her. At this point it should be noted that there is no question that the conduct and actions of the defendant were degrading and morally reprehensible in every respect, but our sole duty and obligation is to determine whether defendant's actions fall within the scope of the conduct proscribed by the statute under which he was informed against and convicted. We must answer this question in the negative.

In view of the above it is unnecessary to consider the other assignments of error raised by defendant.

The judgment is reversed, with directions to dismiss the information and discharge the defendant.

UDALL, WINDES, PHELPS and STRUCKMEYER, JJ., concur.