STATE OF NORTH CAROLINA v. BOBBY ALLEN RAINES

No. 427PA86

(Filed 7 April 1987)

1. **Rape and Allied Offenses § 1— custodial sexual offense—voluntary patient in private hospital**

As used in the custodial sexual offense statute, N.C.G.S. § 14-27.7, the word "custody" applies to voluntary patients in private hospitals.

State v. Raines

2. **Rape and Allied Offenses § 5— custodial sexual offenses—sufficiency of evidence**

The State's evidence was sufficient to support defendant's convictions for engaging in vaginal intercourse with a person over whom defendant's employer had assumed custody and engaging in a sexual act with a person over whom defendant's employer had assumed custody where it tended to show that the female victim was a patient at a private hospital, defendant was employed as a charge nurse at the hospital, and defendant committed the sex acts alleged.

3. **Rape and Allied Offenses § 6— custodial sexual offense—instruction—housing of hospital patient as custody**

In a prosecution for engaging in vaginal intercourse and another sexual act with a person over whom defendant's employer had assumed custody, the trial court's instruction that "a medical hospital's housing of a patient would be custody" correctly stated a matter of law and did not remove the jury's duty to find the fact of custody.

4. **Criminal Law § 26.5— acquittal of rape and sexual offense—conviction of custodial sexual offenses—no double jeopardy**

Where defendant was acquitted of second degree rape and his conviction of second degree sexual offense was reversed on appeal for lack of evidence of force, the subsequent conviction of defendant for offenses of engaging in vaginal intercourse and another sexual act with a person over whom defendant's employer had assumed custody based on the same incidents did not violate the double jeopardy provisions of the fifth amendment to the U. S. Constitution and Art. I, § 19 of the N. C. Constitution since custodial sexual offense requires proof of custody which second degree rape and second degree sexual offense do not require, and both second degree rape and second degree sexual offense require proof of an act of force which custodial sexual offense does not require.

5. **Criminal Law § 138.27— aggravating factor—position of trust or confidence—same evidence for two factors**

The trial court erred in finding as an aggravating factor for custodial sexual offense that "defendant took advantage of a position of trust or confidence to commit the offense" since the evidence that proved the aggravating factor was necessary to prove the custodial element of the offense, and the finding of the aggravating factor was proscribed by N.C.G.S. § 15A-1340.4(a).

Justice MARTIN dissenting.

Justices FRYE and WEBB join in this dissenting opinion.

ON discretionary review of a decision of the Court of Appeals, 81 N.C. App. 299, 344 S.E. 2d 138 (1986), which found no error in defendant's trial, which resulted in convictions for (1) engaging in vaginal intercourse with a person over whom defendant's employer had assumed custody, and (2) engaging in a sexual

act with a person over whom defendant's employer had assumed custody, both acts being found to violate N.C.G.S. 14-27.7. Judgment was entered by *Lamm, J.,* at the 8 July 1985 Regular Criminal Term of Superior Court, BUNCOMBE County. Heard in the Supreme Court 9 February 1987.

*Lacy H. Thornburg, Attorney General, by Elisha H. Bunting, Jr., Assistant Attorney General, for the State.*

*Elmore & Powell, P.A., by Bruce A. Elmore, Sr. and Stephen P. Lindsay, for defendant-appellant.*

WHICHARD, Justice.

The State's evidence, in pertinent part, showed the following:

The victim suffered from migraine headaches so severe that "sometimes [she] would pass out, or most of the time [she] would be extremely . . . nauseated." On the morning of 13 July 1983 the victim went to the emergency room at St. Joseph's Hospital, a private hospital in Asheville, complaining of a migraine headache. She was placed in intensive care later that day when she experienced severe nausea and vomiting. She described her condition as "still vomiting severely and just too weak to move." She was "hooked up" to both "an IV" and a heart monitor.

The victim's husband visited her during the 7:00 p.m. visiting hour. She was vomiting severely at the time. Defendant, a charge nurse employed by the hospital in its intensive care unit, entered the room, administered a shot to the victim and told her it "would take care of [her] vomiting in about 10 minutes."

The victim's husband then left, and the next person the victim saw was defendant. Defendant gave her a back rub and left, but subsequently returned and gave her "an injection in [her] IV" which caused a burning sensation. Approximately ten minutes later defendant returned, inserted his hand into the victim's vagina, and "started pushing harder and harder." He tried to insert his penis "but it didn't go." He "began to rock back and forth" and in a few minutes ejaculated on the victim.

Defendant later returned and administered another injection in the victim's "IV." The victim felt the same burning sensation as before. Defendant left, returned a few minutes later, pulled the

victim to the side of the bed, and "inserted his penis." The victim testified: "[T]his time it did go." Defendant "began to rock back and forth again" but was interrupted and left when someone called for him. He subsequently returned and sexually assaulted the victim again. She testified: "He inserted his penis into the vagina and rocked back and forth again for a while."

Visual and microscopic examinations of the victim's nightgown and bedsheets revealed the presence of semen and spermatozoa. An SBI chemist examined the semen. He also examined blood samples from defendant, the victim's husband, and a respiratory therapist who had monitored the victim's oxygen on the night in question. The chemist testified that neither the victim's husband nor the therapist could have contributed the semen found on the victim's nightgown, but that defendant could have.

Defendant testified, denying any sexual contact with the victim. He stated: "I at no time touched [the victim] in any way that was improper or unprofessional." Other hospital personnel testified that they observed nothing unusual in or about the intensive care unit that night, and that nothing unusual was reported to them.

The jury returned verdicts of guilty of (1) engaging in vaginal intercourse with a person over whom defendant's employer had assumed custody, and (2) engaging in a sexual act with a person over whom defendant's employer had assumed custody. N.C.G.S. 14-27.7 (1986). Defendant appealed from judgments of imprisonment for four years on each count. The Court of Appeals found no error in the trial, but remanded for resentencing. This Court allowed discretionary review on 12 August 1986.

[1] First, defendant contends the trial court erred in denying his motions to dismiss and to set aside the verdict. He argues that the State failed to prove that his employer, St. Joseph's Hospital, had custody of the victim. We disagree.

The statute under which defendant was convicted provides:

[I]f a person having custody of a victim of any age or a person who is an agent or employee of any person, or institution, whether such institution is private, charitable, or governmental, having custody of a victim of any age engages in vaginal intercourse or a sexual act with such victim, the

defendant is guilty of a Class G felony. Consent is not a defense to a charge under this section.

N.C.G.S. 14-27.7 (1986). Defendant contends that the custodial relationship, which is an element of the offense created by this statute, cannot exist between a private hospital and its patient because the patient voluntarily submits to the hospital's care and control and thus can leave or refuse treatment at any time. Defendant would limit the meaning of the word "custody," as used in the statute, to legal control or restraint.

We do not believe the General Assembly intended such a narrow construction. Words in a statute generally must be construed in accordance with their common and ordinary meaning, unless a different meaning is apparent or clearly indicated by the context. *State v. Koberlein*, 309 N.C. 601, 605, 308 S.E. 2d 442, 445 (1983). The ordinary meaning of the word "custody" is not limited to legal control or restraint. The word's definitions include an aspect of care, preservation, and protection as well. *See* Burton, Legal Thesaurus 131 (1980) ("care, charge, control"); Black's Law Dictionary 347 (5th ed. 1979) (the "care and control of a thing or person"); Webster's New International Dictionary (3d ed. unabridged 1964) (the "act or duty of guarding and preserving"). Voluntary patients in a private hospital place themselves in the care, charge, and control of the institution. The normal role of the hospital is to guard, preserve, and restore the health of patients who are in its care, charge or control. We thus conclude that the ordinary meaning of the word "custody," in the context in which it is used here, applies to voluntary patients in a private hospital.

As further indication of legislative intent, we note that the statute expressly applies to "*any*" private institutions. Because patients in private institutions generally are voluntary admittees, the General Assembly must have intended—by the express, unlimited inclusion of such institutions—to extend the protection of the statute to those patients.

Further, the purpose of the statute—prevention of sexual abuse by institutional personnel of persons in an institution's care—is no less applicable, nor is such abuse of a position of trust less reprehensible, in a private hospital-voluntary patient context than otherwise. While voluntary patients in private hospitals may have the legal power to terminate their stay, in reality their

physical freedom is normally restricted by the condition that motivated their admission. Such restraint is not dissimilar from that imposed on a penal institution inmate or an involuntarily committed patient. As stated by the Court of Appeals:

> [V]oluntary patients need the protection that the statute provides no less than committed patients; for . . . while they remain as patients of a hospital they are as vulnerable as committed patients to abuse by employees who have ready access to their quarters and supply them with food, drink, medication, assistance, and other necessary care.

*State v. Raines*, 81 N.C. App. at 302, 344 S.E. 2d at 140.

In adopting this construction we are not unmindful that "criminal statutes are to be strictly construed against the State." *State v. Glidden*, 317 N.C. 557, 561, 346 S.E. 2d 470, 472 (1986). However,

> [t]he object in construing penal, as well as other statutes, is to ascertain the legislative intent. . . . The words must not be narrowed to the exclusion of what the legislature intended to embrace. . . . When the words . . . include various classes of persons, there is no authority which would justify a court in restricting them to one class and excluding others, where the purpose of the statute is alike applicable to all. The proper course in all cases is to adopt that sense of the words which best harmonizes with the context, and promotes in the fullest manner the policy and object of the legislature. The rule of strict construction is not violated by permitting the words of [a] statute to have their full meaning, or the more extended of two meanings, . . . but the words should be taken in such a sense, bent neither one way nor the other, as will best manifest the legislative intent.

*United States v. Hartwell*, 73 U.S. (6 Wall.) 385, 395-96, 18 L.Ed. 830, 832-33 (1868).

> The canon in favor of strict construction [of criminal statutes] is not an inexorable command to override common sense and evident statutory purpose. . . . Nor does it demand that a statute be given the "narrowest meaning"; it is satisfied if the words are given their fair meaning in accord with the manifest intent of the lawmakers.

*United States v. Brown*, 333 U.S. 18, 25-26, 92 L.Ed. 442, 448 (1948).

We conclude that to construe the word "custody," as used in N.C.G.S. 14-27.7, to apply to voluntary patients in a private hospital gives the word its "fair meaning in accord with the manifest intent of the lawmakers." *Id.* We thus reject defendant's contention.

[2] On a motion to dismiss for insufficiency of the evidence, the question for the trial court is whether there is substantial evidence of each element of the crime charged and of the defendant's perpetration of such crime. *State v. Young*, 312 N.C. 669, 680, 325 S.E. 2d 181, 188 (1985). The court must consider the evidence in the light most favorable to the State, allowing every reasonable inference to be drawn therefrom. *Id.* Here the State presented uncontroverted evidence that the female victim was a patient at St. Joseph's Hospital at the time of the incidents alleged. She thus was in the hospital's "custody" within the meaning and intent of that word as used in N.C.G.S. 14-27.7. There was also substantial evidence that defendant was an employee of the hospital and that he committed the sex acts alleged. The motions to dismiss and to set aside the verdict thus were properly denied. This assignment of error is overruled.

[3] Second, defendant contends the trial court erred in instructing the jury that "[a] medical hospital's housing of a patient would be custody." He argues that this instruction impermissibly relieved the State of its burden of proving beyond a reasonable doubt an essential element of the crime, *viz*, custody. *See In re Winship*, 397 U.S. 358, 25 L.Ed. 2d 368 (1970); *State v. Torain*, 316 N.C. 111, 112-23, 340 S.E. 2d 465, 468-72, *cert. denied*, --- U.S. ---, 93 L.Ed. 2d 77 (1986).

While the presence or absence of custody is a question of fact, whether the hospital-patient relationship constitutes custody within the meaning and intent of N.C.G.S. 14-27.7 is one of law. We have held above that the legal conclusion stated in the instruction is correct. No presumption is created when the trial court fulfills its duty of declaring a matter of law. *State v. Torain*, 316 N.C. at 123, 340 S.E. 2d at 472. "Presumptions may potentially arise only as to certain 'elemental' questions of fact and have

no applicability to the trial court's resolution of questions of law." *Id.* This assignment of error is thus overruled.

**[4]** Third, defendant contends that his conviction violates the double jeopardy provisions of the fifth amendment to the United States Constitution and Article I, Section 19, of the North Carolina Constitution. *See State v. Revelle,* 301 N.C. 153, 162, 270 S.E. 2d 476, 481 (1980); *State v. Birckhead,* 256 N.C. 494, 496-97, 124 S.E. 2d 838, 841 (1962) (double jeopardy principle regarded as integral part of "law of the land" clause of state constitution). He argues that he had been tried previously for second-degree rape (N.C.G.S. 14-27.3) and second-degree sexual offense (N.C.G.S. 14-27.5) based on the incidents alleged in the indictment here. He was acquitted of second-degree rape but convicted of second-degree sexual offense. The Court of Appeals reversed the conviction, however, on the ground that there was no evidence of the essential element of force. *State v. Raines,* 72 N.C. App. 300, 324 S.E. 2d 279 (1985).

> Traditionally, the United States Supreme Court has applied what has been referred to as the *Blockburger* test in analyzing multiple offenses for double jeopardy purposes. The opinion in *Blockburger v. United States,* 284 U.S. 299, 304, 76 L.Ed. 306, 309 (1932), stated:
>
>> The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.
>
>> If what purports to be two offenses actually is one under the *Blockburger* test, double jeopardy prohibits successive prosecutions, *Brown v. Ohio,* 432 U.S. 161, 53 L.Ed. 2d 187 (1977); *Harris v. Oklahoma,* 433 U.S. 682, 53 L.Ed. 2d 1054 (1977); *Illinois v. Vitale,* 447 U.S. 410, 65 L.Ed. 2d 228 (1980) . . . .

*State v. Gardner,* 315 N.C. 444, 454, 340 S.E. 2d 701, 708-09 (1986). Second-degree rape and second-degree sexual offense require an act by force and against the will of another person. N.C.G.S. 14-27.3, -27.5 (1986). Custodial sexual offense does not. N.C.G.S.

14-27.7 (1986). Custodial sexual offense requires that the perpetrator, or the perpetrator's principal or employer, have custody of the victim. *Id.* Second-degree rape and second-degree sexual offense do not. N.C.G.S. 14-27.3, -27.5 (1986). Custodial sexual offense thus requires proof of a fact which second-degree rape and second-degree sexual offense do not, and both second-degree rape and second-degree sexual offense require proof of a fact which custodial sexual offense does not. Double jeopardy considerations thus are not implicated.

Defendant argues that the trial court's instruction that "[a] medical hospital's housing of a patient would be custody" removes custody as an element of the custodial sexual offense, and thereby invokes double jeopardy principles. The argument is without merit. As held above, this instruction stated a matter of law; it did not remove the jury's duty to find the *fact* of custody. This assignment of error is overruled.

[5] Finally, the State, as appellee, argues pursuant to N.C.R. App. P. 16(a) that the Court of Appeals erred in remanding the case for resentencing. The trial court found as an aggravating factor that "[t]he defendant took advantage of a position of trust or confidence to commit the offense." *See* N.C.G.S. 15A-1340.4(a)(1)(n) (1983). We agree that this was error. "Evidence necessary to prove an element of the offense may not be used to prove any factor in aggravation . . . ." N.C.G.S. 15A-1340.4(a) (1983). Under the facts here a showing of a relationship of trust and confidence was needed to prove the custodial element of the offense. The evidence that proved the aggravating factor thus was necessary to prove the custodial element of the offense, and the finding of the aggravating factor was proscribed by N.C.G.S. 15A-1340.4(a) (1983).

For the foregoing reasons, the decision of the Court of Appeals is affirmed. The case is remanded to that Court for further remand to the trial court for sentencing of the defendant not inconsistent with this opinion.

Affirmed.

Justice MARTIN dissenting.

### I.

The majority today decides that a voluntary patient in a private hospital is in the "custody" of the hospital within the meaning of N.C.G.S. § 14-27.7. I cannot follow the majority in its tortured path to this conclusion and therefore dissent.

As the majority states, custody involves the control of a person. As the evidence in this case amply shows, St. Joseph's Hospital did not have control of the female prosecuting witness, either in law or in fact.

Q. Now,. are you saying that you're familiar with the admission policies of St. Joseph's Hospital?

A. Yes, sir.

Q. Now, is a patient admitted, I believe you said by — only if a doctor recommends the patient?

A. That's right.

Q. When they go in a hospital, are they free to leave anytime they want to?

A. Yes, they are.

Q. Can they leave even against the doctor's orders or the nurse's orders?

A. Yes, when a patient comes in he signs a consent for treatment, and any unusual treatment has to have a separate consent, and a patient can leave anytime he wants to or refuse any treatment.

Q. Can he refuse medicines if he wants to?

A. Yes.

Q. Can he get up and walk out without any reason at all?

A. If you want to do that.

Q. Do you all have any control over them at all unless he wants it? Do you exercise any control —

A. We don't physically keep anyone in, no.

Q. And you do nothing against his will, the patient's will, or her will?

A. No. No.

Q. Now, you do have—One section of your hospital—Let's see, what floor is the intensive care unit on?

A. It's on the 10th floor, the top floor.

Q. Is that the only thing on that floor, or are there other things on that floor?

A. Coronary care is up there and the stepdown unit is up there.

Q. You do have one unit on one floor called *Kingdom Hall*, don't you?

A. Yes, sir, on the 5th floor.

Q. What kind of hall is that?

A. That's a fourteen-bed psychiatric unit.

Q. And that has nothing to do with the intensive care unit?

A. No, sir, not at all.

Q. It's a different—You do have some patients there that the hospital takes custody over?

A. Within the last—well, just within this calendar year we have started taking some committed patients, but that's all.

Q. Was [prosecuting witness] a committed patient?

A. No, sir, we did not have any committed patients until this year.

Q. Even *Kingdom Hall* didn't have any?

A. No, they did not.

Q. You just took patients who were having problems who wanted to come in voluntarily?

A. Yes, they were all voluntary admissions.

Q. Now, did you attempt in any way to require [prosecuting witness] or anybody else to do anything against their will?

A. No, sir.

Q. Did you at any time restrain [prosecuting witness] from leaving that hospital?

A. No, sir.

Q. She could have gotten up and walked out anytime she chose?

A. Yes, sir, a patient can do that, except the committed ones.

. . . .

Q. And when she was in intensive care, was the hospital responsible for her care?

. . . .

A. Just the same as we're responsible for any patient's care.

. . . .

Q. Now, Mr. Brown asked you, I believe, if you didn't take charge of the care of this patient, [prosecuting witness], and I'll ask you if you didn't confine that just to her medical care?

A. Yes, sir.

Q. And even for medical care, she could either approve or disapprove of any procedure, is that right?

A. Yes, sir, that's right.

Q. And she could refuse any procedure or any medication?

A. That's right. Any patient can do that.

Q. And her will would prevail, rather than your will?

A. Yes, sir.

The prosecuting witness testified:

Q. What did the nurses do there in your room?

A. They wanted to give me a bath.

Q. Did you let them give you a bath at that time?

A. No, I did not.

. . . .

Q. You saw no other nurse?

A. I saw one when I was trying to leave the hospital, but I couldn't tell you who she was.

As the foregoing evidence demonstrates, assuming the majority is correct in extending the meaning of "custody," the record does not contain any evidence to support a jury finding that this victim was in custody at the time of the alleged events. The motion to dismiss should have been allowed on a factual basis.

Further, I do not agree that, as a matter of law, custody within the meaning of the statute includes a person who is a voluntary patient in a hospital, public or private. The majority opinion does not contain all the relevant parts of the statute. The entire statute follows:

> If a defendant who has assumed the position of a parent in the home of a minor victim engages in vaginal intercourse or a sexual act with a victim who is a minor residing in the home, or if a person having custody of a victim of any age or a person who is an agent or employee of any person, or institution, whether such institution is private, charitable, or governmental, having custody of a victim of any age engages in vaginal intercourse or a sexual act with such victim, the defendant is guilty of a Class G felony. Consent is not a defense to a charge under this section.

N.C.G.S. § 14-27.7 (1986). In determining the legislative intent with respect to the statute, it is noted that the statute opens with the reference to parent-child relationships and then proceeds to alternative custody positions. Thus it appears that the legislature first intended to protect children from those occupying a parental relationship and also other persons in similar custodial relationships. As the legislature did not define "custody" as used in the statute, statutory interpretation would lead one to the conclusion that the legislature intended "custody" to be of the same nature as the parent-child relationship. *See State v. Fenner*, 263 N.C.

694, 140 S.E. 2d 349 (1965). A voluntary patient in a private hospital certainly does not occupy a position in any way similar to that of a child with respect to its parent. As the evidence in this case shows, such patient is free to leave the hospital at any time regardless of the desires of the attending physician or the hospital; the patient can refuse any medical procedure or treatment; the patient can refuse the "care" of the hospital (here the victim would not allow the nurses to give her a bath); the patient can exercise her own free will.

Of course, criminal statutes must be strictly construed against the state. *State v. Ross*, 272 N.C. 67, 157 S.E. 2d 712 (1967). Criminal statutes must be liberally construed in favor of a defendant, with all conflicts resolved in favor of defendant. *State v. Pinyatello*, 272 N.C. 312, 158 S.E. 2d 596 (1968); *State v. Scoggin*, 236 N.C. 1, 72 S.E. 2d 97 (1952). Ordinary words in a statute are given their ordinary meaning. All of the majority's definitions of custody involve some aspect of control; this appears to be true in *all* definitions of custody—the institution must have control, either actual or legal, over the person. "Custodial" is defined in Webster's Ninth New Collegiate Dictionary at 318 as "marked by or given to watching and protecting rather than seeking to cure." This definition argues strongly that voluntary patients in hospitals are not in "custody." The statement in the majority's opinion that voluntary patients in a private hospital place themselves in the "care, charge, and control" of the hospital is unsupported by any citation of authority and is contrary to all the evidence in this case. The evidence set forth above clearly shows that the prosecuting witness in this case had control of whether she would remain in the hospital, whether she would submit to treatment by the physicians and hospital, and whether she would submit to the care of the hospital. In truth, the evidence discloses that the hospital offered its services to her, even recommended certain medical treatment and care, but the patient had control of the decision of whether to submit to the care, treatment, and hospitalization itself. This is not "custody" as used in the statute.

It is true, of course, that voluntary patients in hospitals must be protected from sexual assaults. They are provided that protection by N.C.G.S. §§ 14-27.2 to .6, -33(a), (b)(1)-(3), -39, and numerous other statutes. Such patients are not left unprotected by construing this statute against the state.

The decisions of this Court and other jurisdictions support the conclusion that the victim in this case was not in custody. In *Wilkes v. Slaughter*, 10 N.C. 211 (1824), this Court held that "custody implies physical force sufficient to restrain the prisoner from going at large . . . ." *Id.* at 216, *overruled on other grounds, Currie v. Worthy*, 47 N.C. 104 (1854).

Voluntary hospital patients are not in "custody" for Miranda purposes. *State v. Lapp*, 202 Mont. 327, 658 P. 2d 400 (1983); *People v. Brice*, 239 Cal. App. 2d 181, 48 Cal. Rptr. 562 (1966). The test applied in these cases was whether the hospital patient had been deprived of his freedom in any significant way. In *Brice* the court rejected the argument that where a patient was bedridden it was tantamount to being in custody.

In *State v. Jackson*, 80 Ariz. 82, 292 P. 2d 1075 (1956), the Arizona court, in interpreting "custody" as used in a criminal statute where "custody" was an essential element of the crime, held that in order to be in "custody" the person must be under the control of and subject to the orders of another person. The Arizona court relied upon *People v. Drake*, 162 Cal. 248, 121 P. 1006 (1912), holding that custody implied being under the control of another, in some restraint so that the person is not free to come and go or otherwise act as he pleases.

I conclude that the motion to dismiss should have been granted both because there was insufficient evidence to support a jury finding that the victim was in custody of the hospital and that as a matter of law "custody" as used in the statute does not include a voluntary patient in a private hospital.

II.

I also dissent from the holding of the majority finding no error in the jury charge of the trial judge. In pertinent part, the trial judge charged the jury: "Second, that St. Joseph's Hospital had custody of [prosecuting witness]. Custody is the care, keeping or control of one person by another. A medical hospital's housing of a patient would be custody," and with respect to the sexual offense charge: "Second, the State must prove beyond a reasonable doubt that St. Joseph's Hospital had custody of [prosecuting witness]. Custody is the care, keeping or control of one person by

another. A medical hospital's housing of a patient would be custody."

The elements of this offense are:

    1. The defendant had vaginal intercourse (or committed a sexual act) with the victim;

    2. The victim was then in the custody of (name institution);

    3. The defendant was an agent of the institution.

N.C.P.I.—Crim. 207.70 (1986). The pattern jury instructions contain a footnote: "It [N.C.G.S. § 14-27.7] appears to be intended to make criminal all sexual activity of persons having legal custody, such as guardians, jailers or employees of mental institutions, with their wards."

The state has the burden to prove beyond a reasonable doubt as an element of the offense that the victim was in the custody of an institution at the time of the offense. *See Mullaney v. Wilbur*, 421 U.S. 684, 44 L.Ed. 2d 508 (1975); *In re Winship*, 397 U.S. 358, 25 L.Ed. 2d 368 (1970); *State v. Patterson*, 297 N.C. 247, 254 S.E. 2d 604 (1979).

The trial judge's instructions went beyond even the majority's notion of the meaning of custody, telling the jury that *housing* of the victim by the hospital would be custody. In its final mandate to the jury, the trial court only required the jury to find that St. Joseph's Hospital was "housing" the victim as a patient in order to find that she was in the custody of the hospital. In so doing, the trial court erred. At the very least, under the majority's definition of custody, the jury would have to find that the victim was in the care, charge, and control of the hospital at the time in question. By failing to so do, the trial court improperly relieved the state of a part of its burden of proof, and defendant is entitled at least to a new trial. *Mullaney v. Wilbur*, 421 U.S. 684, 44 L.Ed. 2d 508. Failure to properly charge upon an essential feature of the case requires a new trial. *State v. Ward*, 300 N.C. 150, 266 S.E. 2d 581 (1980).

On the first issue the defendant is entitled to a dismissal of the charges. At the very least he is entitled to a new trial for the erroneous jury instruction.

Justices FRYE and WEBB join in this dissenting opinion.